**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **HAL D. HICKS, f/d/b/a HAL D. HICKS MAIL TRANSPORTATION,** | ) | **Fed. Cl. No. 05-1058C** |
| **Plaintiff** | ) | **(Judge Allegra)** |
| **v.** | ) | |
| **UNITED STATES,** | ) | |
| **Defendant** | ) | |
| **v.** | ) | |
| **MIDWEST TRANSPORT, INC.** | ) | |
| **Defendant-Intervenor.** | ) | |

**DEFENDANT INTERVENOR MIDWEST TRANSPORT INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

David P. Hendel
AKERMAN SENTERFITT WICKWIRE GAVIN
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22124
(703) 790-8750

*Attorney of Record for Midwest Transport, Inc.*

*Of Counsel:*
J. Michael Littlejohn
AKERMAN SENTERFITT WICKWIRE GAVIN
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22182

John E. Hilton
CARMODY, MACDONALD, P.C.
120 S. Central Ave, Suite 1800
St. Louis, MO 63105

October 26, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

INDEX TO APPENDIX ........ iv

INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 2

ARGUMENT ........ 7

I. Defendant Is Entitled To Summary Judgment As a Matter of Law ........ 7

II. Plaintiff's Claims Should Be Denied Because The Buffalo Route Contract Was Properly Acquired By and Novated to Midwest Transport ........ 8

A. The Receiver Had Authority to Sell, and Did Sell, the Buffalo Route Contract to Midwest Transport ........ 9

B. The Postal Service's Novation of the Buffalo Route Contract to Midwest Transport Was Proper ........ 11

III. Plaintiff's Claims Should Be Denied Because It Is Not Entitled To, Or Eligible For, Any Remedy Sought In Its Complaint ........ 13

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ..... 7, 8

Arko Executive Servs., Inc. v. United States,
Nos. 05-1193C & 06-0296C, 2007 WL 2705904 (Fed. Cl. Sept. 12, 2007) ..... 8

Avtel Servs., Inc. v. United States,
No. 06-5060, 2007 WL 2363341 (Fed. Cir. Aug. 21, 2007) ..... 13

Blancett v. Taylor,
128 N.E.2d 916 (Ill. 1955) ..... 11

Froehlich v. J.R. Froelich Mfg. Co.,
416 N.E.2d 1134 (Ill. App. Ct. 1981) ..... 13

Hicks v. Midwest Transport, Inc.,
No. 2004-CV-4263, 2005 WL 1267463 (S.D. Ill. May 16, 2005) ..... 12

J. Leonard Spodek v. United States,
46 Fed. Cl. 819 (2000) ..... 12

L.P. Consulting Group, Inc. v. United States,
66 Fed. Cl. 238 (Fed. Cl. 2005) ..... 8

Levy v. Broadway-Carmen Bldg. Corp.,
8 N.E.2d 671 (Ill. 1937) ..... 11

Lockheed Martin Corp. v. United States,
70 Fed. Cl. 745 (2006) ..... 7

Parcel 49C v. United States,
31 F.3d 1147 (Fed. Cir. 1994) ..... 13

Pewabic Min. Co. v. Mason,
145 U.S. 349 (1892) ..... 10

Steinbrecher v. Steinbrecher,
759 N.E.2d 509 (Ill. 2001) ..... 10

United Med. Supply Co. v. United States,
63 Fed. Cl. 430 (2005) ..... 8

Witters v. Hicks,
780 N.E.2d 713 (Ill. App. Ct. 5th 2002) ........................................................................ *passim*

Witters v. Hicks,
790 N.E.2d 5 (Ill. App. Ct. 5th 2003) ..............................................................................12

**Statutes**

805 Ill. Comp. Stat. 5/12.56................................................................................................2

805 Ill. Comp. Stat. 5/12.60................................................................................................2

# INDEX TO APPENDIX


**App. Page**

July 24, 2001 Decision, Witters v. Hicks, Circuit Court of the Second Judicial Circuit, Lawrence County, Illinois, Law No. 2000-L-2 ........0001

July 25, 2001 Order, Witters v. Hicks, Circuit Court of the Second Judicial Circuit, Lawrence County, Illinois, Law No. 2000-L-2 ........0005

August 24, 2001 Order, Witters v. Hicks, Circuit Court of the Second Judicial Circuit, Lawrence County, Illinois, Law No. 2000-L-2 ........0010

Section 6.5.4 of the Postal Service Purchasing Manual, Issue 2, January 31, 2002 ........0011

March 25, 2002 Order on Plaintiffs' Motion for Partial Summary Judgment on the Issue of Corporate Dissolution and the Appointment of a Liquidating Receiver, Witters v. Hicks, Circuit Court of the Second Judicial Circuit, Lawrence County, Illinois, Law No. 2000-L-2 ........0013

December 27, 2002 Letter of Intent Regarding Purchase of Midwest Transit, Inc. Assets........0016

December 30, 2002 Motion for Authority to Enter Into Contract for Sale, Witters v. Hicks, Circuit Court of the Second Judicial Circuit, Lawrence County, Illinois, Law No. 2000-L-2 ........0029

January 14, 2003 Order Approving Motion for Authority to Enter Into Contract for Sale, Witters v. Hicks, Circuit Court of the Second Judicial Circuit, Lawrence County, Illinois, Law No. 2000-L-2 ........0056

February 7, 2003 Definitive Asset Purchase Agreement........0057

February 18, 2003 Order, Witters v. Hicks, Circuit Court of the Second Judicial Circuit, Lawrence County, Illinois, Law No. 2000-L-2 ........0102

March 5, 2003 Notice of Appeal, Witters v. Hicks, Circuit Court of the Second Judicial Circuit, Lawrence County, Illinois, Law No. 2000-L-2 ........0103

March 10, 2003 Letter from Sharp to Young ........0106

March 18, 2003 Order, Witters v. Hicks, Appellate Court of Illinois, Fifth District, No. 5-03-0138........0109

June 19, 2003 Postal Service Notice of Renewal ........0110

September 7, 2003 First Amendment to Definitive Asset Purchase Agreement .......................0112

October 2, 2003 Letter from Sharp to Sykes ..............................................................................0125

December 4, 2003 Novation Agreement .....................................................................................0127

Postal Service Purchasing Manual, Issue 3, December 25, 2003 .............................................0131

Contract Route Service Order No. 200-008-04 ..........................................................................0136

Contract Route Service Order No. 200-009-04 ..........................................................................0137

April 4, 2004 Affidavit of Kenneth Hohlbaugh, Witters v. Hicks,
Circuit Court of the Second Judicial Circuit, Lawrence County,
Illinois, Law No. 2000-L-2 ..........................................................................................0138

October 26, 2007 Affidavit of J. Michael Littlejohn ..................................................................0144

**DEFENDANT INTERVENOR MIDWEST TRANSPORT INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to RCFC 56, Defendant-Intervenor, Midwest Transport ("Midwest Transport"), by undersigned counsel, respectfully requests summary judgment in favor of defendants and for dismissal of Plaintiff's complaint with prejudice. The grounds for Midwest Transport's motion are set forth herein. Midwest Transport also files herewith an Appendix in support of its motion, as well as its "Proposed Findings of Uncontroverted Facts."

## INTRODUCTION

Contrary to Plaintiff's allegations, he has no rights in Contract 14024 (the "Buffalo Route" contract or "Contract 14024"). The Illinois Circuit Court and Illinois Appellate Court have already decided that Hicks acted fraudulently and oppressively with respect to Midwest Transit and the Buffalo Route. As a result, the Illinois courts appointed a Receiver for Midwest Transit and approved the sale of its Postal Service-related assets and contracts, including the Buffalo Route contract. Midwest Transport obtained the Buffalo Route contract as a result of the Receiver's court-authorized and approved sale of the contract assets and the Postal Service's novation of the contract to Midwest Transport. Plaintiff's complaint seeks to undo or re-try these authorized transactions and, in the process, override the decisions and authority of the Illinois state courts. For these reasons and the others set forth herein, this Court should grant summary judgment for Defendants, enter judgment against Plaintiff, and dismiss the complaint with prejudice.

## STATEMENT OF FACTS

Midwest Transit was owned 50% by Hicks and 50% by C. Michael and Diane Witters ("Witters"). App. 0139.[1] In 2000, after disputes arose between the owners, the Witters filed suit on their own behalf, and derivatively on behalf of Midwest Transit, against Hicks and Midwest Transit, Inc. in the Circuit Court of the Second Judicial Circuit in Lawrence County, Illinois ("Circuit Court"), Law No. 2000-L-2. App. 0139. In that action, the Witters alleged that Hicks had engaged in fraudulent activities and that he had misapplied and wasted Midwest Transit assets. App. 0139. Witters requested that the Circuit Court determine the rights of the parties as it related to Midwest Transit in accordance with the Illinois Business Corporation Act of 1983. See 805 Ill. Comp. Stat. 5/12.56, 5/12.60; see also Witters v. Hicks, 780 N.E.2d 713, 715–16 (Ill. App. Ct. 5th 2002) ("Hicks I"). Witters requested the appointment of a Receiver or custodian pursuant to 805 Ill. Comp. Stat. 5/12.56 and 805 Ill. Comp. Stat. 5/12.60, which also allows dissolution of a non-publicly traded corporation if the court finds one of the following has occurred: (1) the directors are deadlocked over important issues; (2) the directors are deadlocked and cannot elect successors; (3) the directors have acted "in a manner that is illegal, oppressive, or fraudulent"; or (4) corporate assets are "being misapplied or wasted." 805 Ill. Comp. Stat. 5/12.56.

The Circuit Court heard testimony and accepted evidence in the Witters action during a multi-day hearing. App. 0001. On July 24, 2001, the Circuit Court issued its opinion, finding that "illegal, oppressive, or fraudulent" behavior under 805 Ill. Comp. Stat. 12.56(a)(3) existed with respect to actions and dealings of Hicks with Midwest Transit. App. 0002, 0006–07. Of note, it found that Hicks had engaged in "oppressive activity" because "Hicks treats the Buffalo

[1] The materials supporting Midwest Transport's Motion for Summary Judgment have been compiled in the attached Appendix, which will be cited as "App."

Route as his own business and does not deposit the revenues received from said route into Midwest's accounts." App. 0002, 0006. Based on those findings, the Circuit Court decided that the appointment of a Receiver for the corporation was necessary. App. 0008. Moreover, it enjoined the parties from interfering with the Receiver's control of Midwest Transit and from "diverting any funds away from the corporation and its accounts, including . . . all income generated by the Buffalo Route." App. 0003, 0008. All parties were to direct such funds to the Receiver if they were received. App. 0003, 0009.

The Circuit Court repeated these findings in a July 25, 2001 Order appointing Don Hoagland as the interim Receiver for Midwest Transit, Inc. under the authority of 805 Ill. Comp. Stat. 5/12.60(d). App. 0003, 0009. The Circuit Court gave the Receiver "plenary powers to run the business of Midwest Transit, Inc. pending the resolution of the current litigation or until further order of court." App. 0003, 0008. The court made clear that the Buffalo Route was to be considered a company asset. App. 0003, 0008. The court ordered that the Receiver would have the "sole control" of the corporation's finances and again enjoined the parties from "diverting any funds away from the corporation" which included, specifically, "all income generated by the Buffalo Route." App. 0008. The court considered the Buffalo Route to be an asset of Midwest Transit that no one was to take "away from the corporation." App. 0008.

On March 25, 2002, the Circuit Court ordered the dissolution of Midwest Transit, Inc. and appointed Don Hoagland, who had been the interim receiver, as the Liquidating Receiver (collectively referred to as "Receiver") pursuant to 805 Ill. Comp. Stat. 5/12.56 and 5/12.60. App. 0013. The court granted the Receiver the power to "sell, convey and dispose of all or any part of the assets of Midwest Transit, Inc., either at public or private sale and to take any other action as may be necessary to wind up and liquidate the corporation's business and affairs under

805 ILCS 5/12.30 and to notify known claimants under 805 ILCS 5/12.75." App. 0013–14. In addition, the Receiver was charged with operating Midwest Transit's Postal Service contracts. App. 0014.

Hicks appealed the Circuit Court's decision to appoint a receiver to the Appellate Court of Illinois, Fifth District ("Appellate Court"). In September 2002, the Appellate Court issued an order confirming the Circuit Court's appointment of a Receiver and again found that the Buffalo Route contract was an asset of Midwest Transit. See generally Hicks I, 780 N.E.2d 713. The Appellate Court held that Hicks had acted illegally by using Midwest Transit assets and employees to operate the Buffalo Route. 780 N.E.2d at 443. While the court noted that the Buffalo Route contract was in the name of Hal D. Hicks Mail Transportation, it also recognized that Midwest Transit had operated the contract, paid for the fuel, provided the employees, and had collected the revenue for the contract. Id. As such, the court found that the Buffalo Route contract was operated entirely by Midwest Transit. Id. The appellate court's decision established that the Receiver had the authority to operate the Buffalo Route contract. Specifically, the court noted the following in its opinion:

> The Buffalo route was a mail route operated by MWT. MWT pays for all fuel and other operating costs. MWT employees operate the route and handle all the paperwork for the route. MWT financial statements show a line item for revenue from the Buffalo route. Although maintained in Hicks' name, since its inception, revenue for the Buffalo route had been transferred to MWT. Since the beginning of the present suit, Hicks retained the revenue from the route, although it continues to be operated by MWT and at MWT's expense. Hicks acknowledges that several MWT trucks are used to operate the Buffalo route, but he argues that MWT uses 68 of his trucks but pays him nothing. Not only does this not justify Hicks' use of MWT assets and personnel to operate a route which is in his name and from which he keeps all revenue, but it also is exactly the type of commingling of personal and corporate assets that justifies the appointment of a Receiver.

Id. The Appellate Court thus concluded that the Circuit Court's decision to appoint a

Receiver was proper. Id. at 444.

After the Appellate Court issued its decision, the Receiver signed a term sheet ("Letter of Intent") with two companies (Midwest Transport, Inc. and Midwest Transportation Services, Inc.) for the purpose of selling the assets of Midwest Transit. App. 0016, 0140. The Letter of Intent contemplated execution of a Definitive Asset Purchase Agreement ("Purchase Agreement") between the Buyers and Seller. App. 0016. The letter provided that Midwest Transit, Inc. would sell all assets "useful or necessary to operate a trucking company." App. 0016. Those assets included "[a]ll postal routes" which were listed in Exhibit A of the Letter of Intent. App. App. 0016–17. That list included Contract 14024, the Buffalo Route. App. 0027.

On December 30, 2002, the Receiver filed a motion for authority to enter into contract for sale with the Circuit Court. See generally App. 0029–55. The motion included the Letter of Intent for the Court's review and requested approval for entry into the Purchase Agreement as contemplated by the Letter of Intent. App. 0029–30, 0042. The draft Purchase Agreement was also included as an exhibit to the motion. App. 0030. On January 14, 2003, the Circuit Court granted the Receiver's motion and thereby authorized the Receiver to sign the Letter of Intent and enter into the Purchase Agreement. See App. 0056.

Subsequently, Hicks filed a motion for reconsideration of the Circuit Court's January 14, 2003 Order, which the court denied on February 18, 2003. App. 0102. Hicks then noticed an interlocutory appeal to the Appellate Court, seeking a stay of the Circuit Court's January 14, 2003 Order and its February 14, 2003 denial of his motion for reconsideration. App. 0103. That motion was denied on March 18, 2003. App. 0109.

Meanwhile, in accordance with the Circuit Court's January 14, 2003 Order, the Receiver entered a Purchase Agreement on September 7, 2003 on behalf of Midwest Transit, Inc. consistent with the Letter of Intent to sell certain assets to Midwest Transport, Inc. and Midwest Transportation Services, Inc. See generally App. 0057–0101. Midwest Transit's assets sold under the Purchase Agreement included all 95 of Midwest Transit's Postal Service contracts. App. 0058–59, 0098. The Purchase Agreement's list of Postal Service contracts specifically included Contract 14024, the Buffalo Route. App. 0098. Pursuant to the Purchase Agreement, the Seller also made several representations and warranties that it had the authority to use, own, and sell the assets. See App. 0064-66.

Counsel for the Receiver advised the Postal Service by letter dated March 10, 2003 that, unless and until Hicks obtained a stay of the January 14, 2003 Order, the Receiver retained the authority to enter the sales agreement and to sell assets as set forth in the Letter of Intent unless Hicks obtained a stay. App. 0106–07.

On June 19, 2003, while the Buffalo Route contract was under the control of the Receiver, the Postal Service renewed Contract 14024. App. 0111.

On September 7, 2003, the Receiver entered an amendment to the Purchase Agreement. App. 0112–24. Midwest Transportation Services, Inc., was removed as a party to the Purchase Agreement, leaving only Midwest Transport, Inc. as the buyer. App. 0113. All of the other material provisions of the Purchase Agreement remained the same. App. 0117.

On October 2, 2003, counsel for the Receiver advised the Postal Service once again that the Receiver had full authority to sell the assets of Midwest Transit in accordance with the Circuit Court's January 14, 2003 Order. App. 0125–26. Counsel further advised the Postal Service that Hicks had not obtained a stay of the order and therefore there were no restrictions on

the Receiver's authority to sell assets. App. 0125–26.

The Postal Service, Midwest Transit, Inc. and Midwest Transport, Inc. entered a novation agreement effective December 4, 2003 ("Novation Agreement"), which transferred all of Midwest Transit's contracts to Midwest Transport. App. 0127–30. The Receiver signed the Novation Agreement on behalf of Midwest Transit, Inc. App. 0129. The Novation Agreement referred to and attached the Purchase Agreement and the Circuit Court's January 14, 2003 Order and thereby novated Contract 14024 to Midwest Transport. App. 0127–30.

On January 14, 2004, the Postal Service issued Contract Route Service Order ("Service Order") 200-008-04, announcing that it had approved the December 4, 2003 Novation Agreement transferring contracts held by Midwest Transit, Inc. to Midwest Transport, Inc. App. 0136. The Buffalo Route contract—Contract 14024—was included in the Service Order's list of contracts. App. 0136.

On February 24, 2004, the Postal Service issued Service Order 200-009-04 relative to the Buffalo Route contract, stating that it had approved the December 4, 2003 Novation Agreement novating the contract from Hal D. Hicks Mail Transportation to Midwest Transport, Inc., d/b/a Midwest Transport of Illinois. App. 0137.

## ARGUMENT

### I. Defendant Is Entitled To Summary Judgment As a Matter of Law.

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); see also Lockheed Martin Corp. v. United States, 70 Fed. Cl. 745, 748 (2006). The presence of a dispute over non-material facts will not, in and of itself, defeat a summary judgment motion—as long as the disputed facts are not outcome-

determinative. E.g., Anderson, 477 U.S. at 248. Only a genuine dispute as to a material, outcome-determinative fact will preclude summary judgment. Anderson, 477 U.S. at 248. In reaching a decision on summary judgment, it is not the Court's function to weigh all available evidence. E.g., Arko Executive Servs., Inc. v. United States, Nos. 05-1193C & 06-0296C, 2007 WL 2705904 (Fed. Cl. Sept. 12, 2007). Rather, the Court's task is to "determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. As such, "[t]he court must determine whether the evidence presents a disagreement sufficient to require fact finding, or whether it is so one-sided that one party must prevail as a matter of law." L.P. Consulting Group, Inc. v. United States, 66 Fed. Cl. 238, 240 (Fed. Cl. 2005); see also United Med. Supply Co. v. United States, 63 Fed. Cl. 430, 435 (2005).

Summary judgment is appropriate in this case because there are no genuine issues of material fact, entitling Defendants to judgment as a matter of law. As set forth below, Contract 14024 was properly and effectively sold and novated to Midwest Transport pursuant to the authority of the Illinois Circuit and Appellate courts. Thus, summary judgment in favor of Defendants is appropriate.

## II. Plaintiff's Claims Should Be Denied Because The Buffalo Route Contract Was Properly Acquired By and Novated to Midwest Transport.

Hicks's complaint is based on the theory that the Buffalo Route contract was sold, novated, and transferred without his authority and approval. One of the many flaws in this argument is the assumption that Hicks's approval was still needed to sell or transfer the Buffalo Route contract assets—and the contract itself—after the Circuit Court's July 25, 2001 Order. See App. 0005–09. This assumption is wrong. When the Circuit Court appointed a Receiver for Midwest Transit in July 2001, whatever interest or control Hicks may have had in the Buffalo Route contract came to end. The Circuit Court later authorized the Receiver to sell all assets of

Midwest Transit, specifically including Contract 14024. App. 0013–14. Contract 14024 was sold to Midwest Transport pursuant to court authority and was subsequently novated to Midwest Transport following the authorized sale. App. 0058–59, 0098. Plaintiff seeks to undo all of these authorized transactions and, in the process, override the decisions and authority of the Illinois Circuit Court and Illinois Appellate Court. Because, as the Illinois courts have found, the Receiver had authority over Contract 14024, had authority to dissolve the company, had authority to sell the assets over which it had been given control, and acted in accordance with that authority in selling the assets to Midwest Transport, Plaintiff has no cognizable interest in the Buffalo Route. Therefore, the Court should grant summary judgment in favor of Defendant.

### A. The Receiver Had Authority to Sell, and Did Sell, the Buffalo Route Contract to Midwest Transport.

The Receiver sold Contract 14024 to Midwest Transport pursuant to the authority granted to him by the Circuit Court and affirmed by the Appellate Court. See App. 0056, 0058–59, 0098; see also generally Hicks I, 780 N.E.2d 713. The Receiver's authority included the authority to operate and sell Contract 14024. App. 0010. The Receiver asked the Court for permission to enter into a contract for sale of assets on December 30, 2002 by way of a motion filed in Witters v. Hicks (and served on Hicks). App. 0029–55. The motion included a list of contracts that would be sold, and it identified Contract 14024 as an asset that would be part of the Purchase Agreement. App. 0054. On January 14, 2003, the Circuit Court granted the Receiver's motion for authority to enter into sales contract and thereby authorized the Receiver to sign the Letter of Intent and enter into the proposed Purchase Agreement. App. 0056.

Hicks has legally exhausted his chance to contest the Receiver's authority to possess, control, and sell Contract 14024 and its operational assets. Hicks tried to stop the sale and overturn the Circuit Court's grant of authority to the Receiver, but his appeals were denied. App.

0102 (Circuit Court Order denying motion for reconsideration), 0109 (Appellate Court order denying appeal). He filed a motion to reconsider the January 14, 2003 Order, which was denied by the Circuit Court on February 18, 2003. App. 0102. Hicks then appealed the January 14, 2003 Order and the denial of reconsideration to the Appellate Court of Illinois on March 5, 2003. App. 0103. His appeal was denied on March 18, 2003. App. 0109.

Hicks exhausted his remedies to overturn the January 14, 2003 Order of the Circuit Court and, therefore, the sale is final and proper. Under Illinois law, a sale of property conducted as part of a judicial proceeding must be treated as final and binding if a party does not successfully obtain a stay to prevent the sale. Steinbrecher v. Steinbrecher, 759 N.E.2d 509, 518 (Ill. 2001). In Steinbrecher, the Illinois Supreme Court found that Illinois Supreme Court Rule 305(j) "protects third-party purchasers of property from appellate reversals or modifications to judgments regarding the property, absent a stay of judgment pending the appeal." 759 N.E.2d at 515. Accordingly, Illinois public policy puts the burden on the party seeking to upset the sale to follow procedural requirements and obtain a stay. The Supreme Court stated:

> Public policy of this state supports our conclusion. Illinois law protects the integrity and finality of property sales, including judicial sales. [citations omitted] Indeed, it extends this protection to purchasers who without notice at the time of the purchase buy in good faith. This finality and permanence is relied on by both purchasers and others in connection with the purchase of the property, including financial institutions, title insurers, realtors, and tenants. Absent this policy, no person would purchase real property involved in judicial proceedings, if afterwards he incurred the hazard of losing the property due to facts unknown to him at the time of the sale. A party may avoid the harshness of this rule by complying with the procedural mechanisms available, such as a motion to stay enforcement of the judgment and sale.

Id. at 518. Illinois law regarding finality applies equally to the judicial sale of company assets. See Pewabic Min. Co. v. Mason, 145 U.S. 349, 356 (1892) (noting, in the context of a judicial sale of corporate assets, that "the purpose of the law is that the sale shall be final."). See also,

e.g., Levy v. Broadway-Carmen Bldg. Corp., 8 N.E.2d 671, 675 (Ill. 1937) ("Stability must be given to judicial sales which have reached the point where title has vested in the purchaser."); Blancett v. Taylor, 128 N.E.2d 916, 919 (Ill. 1955) (explaining that "it would be highly inequitable" to disturb a judicial sale when the appellant "w[as] present at the sale" and "made no objection to it until after the sale").

All the parties to this transaction relied on that policy as it related to Contract 14024. For Midwest Transport, the assets purchased under the Purchase Agreement included all 95 of Midwest Transit's Postal Service contracts identified in Exhibit E, which listed Contract 14024. App. 0098. Pursuant to the Purchase Agreement, the Seller (Midwest Transit) made several representations and warranties that it had the authority to use, own, and sell the assets. App. 0065–66 (Sections 4.1, 4.2 and 4.3). Midwest Transport purchased Contract 14024 under the Definitive Asset Purchase Agreement pursuant to those representations. Midwest Transport had the right to rely on those representations, especially after Plaintiff's multiple attempts to thwart the sale had been judicially rebuffed. See App. 0102, 0109. Moreover, the Receiver's counsel advised the Postal Service on October 2, 2003 that the failure of Hicks to overturn or stay the order of the Circuit Court made the sale to Midwest Transport final and proper. See App. 0125–26. Thus, the sale was final and effective under Illinois law.

**B. The Postal Service's Novation of the Buffalo Route Contract to Midwest Transport Was Proper.**

The Novation Agreement was executed pursuant to, and in accordance with, Postal Service regulations and resulted in a binding transfer of the Buffalo Route contract to Midwest Transport. The Postal Service's purchasing regulations allow for novations of contracts from one party to a third party when the third party obtains all of the assets needed to perform the

contracts.[2] App. 0012, 0133–34. The Novation Agreement entered into between the Postal Service, Midwest Transit, and Midwest Transport transferred all of the necessary assets from Midwest Transit to Midwest Transport to perform the Postal Service contract that had previously been operated by Midwest Transit in accordance with Section 6.5.4.c of the Postal Service Purchasing Manual. See App. 0012, 0127–30, 0133–34. Those contracts included Contract 14024. App. 0098.

The Novation Agreement was signed by the Receiver, Don Hoagland, on behalf of Midwest Transit. App. 0129. Hoagland had full authority to sign the Novation Agreement for Midwest Transit pursuant to the Illinois Circuit Court's Orders appointing him as the interim -- and later -- liquidating receiver. See Hicks I, 780 N.E.2d 713) (affirming the appointment of Hoagland as the interim Receiver); Witters v. Hicks, 790 N.E.2d 5 (Ill. App. Ct. 5th 2003) (Hicks II) (affirming the Circuit Court's decision to dissolve Midwest Transit and the appointment of Hoagland as receiver). The Novation Agreement met the requirements of the Postal Service regulations, and it was signed by persons with authority to bind Midwest Transit. The Novation Agreement transferring the Buffalo Route contract to Midwest Transport was thus effective and appropriate. As such, this Court should grant summary judgment to Defendant.[3]

---

[2] The Postal Service is exempt from application of the Anti-Assignment Act, codified at 41 U.S.C. § 15. See J. Leonard Spodek v. United States, 46 Fed. Cl. 819 (2000).

[3] This court's decision to grant summary judgment is not limited by Hicks v. Midwest Transport, Inc., No. 2004-CV-4263-JPG, 2005 WL 1267463, at *4 (S.D. Ill. May 16, 2005). In that case, the district court decided not to grant a motion to dismiss Mr. Hicks' complaint alleging that he owned Contract 14024, but the court did not rule out the possibility of summary judgment. The district court did not consider that Mr. Hicks had not obtained a stay of the January 14, 2003 Order. Moreover, it was apparently not aware of the October 2, 2003 letter that the Receiver provided to the Postal Service regarding the sale. The court's decision was also based on a narrow reading of the state court's decision that, in our view, unreasonably focused on an incomplete understanding of the word "commingling" and ignored the rest of the Illinois state court decisions. Contrary to the district court's reading, the word "commingling" can also include the improper use of corporate assets and funds for personal gain, which was more likely

### III. Plaintiff's Claims Should Be Denied Because It Is Not Entitled To, Or Eligible For, Any Remedy Sought In Its Complaint.

Even if Plaintiff could show that it had some rights in Contract 14024 that were not extinguished by the Illinois court actions and the Receiver's actions, the Court should grant summary judgment because Hicks is not entitled to any remedy requested in its Complaint. First, the Illinois courts barred any entity, including Hicks, from diverting the proceeds of Contract 14024 away from Midwest Transit. Hicks I, 780 N.E.2d at 720–21. Contrary to that decision, Plaintiff's request for relief in this litigation would require this Court to award damages that would, in effect, send income from the Buffalo Route to Hicks. Second, the Court cannot grant the request to "reinstate" Hicks as a party to the contract. Parcel 49C v. United States, 31 F.3d 1147 (Fed. Cir. 1994) (the court must leave the decisions of whom to contract with to the agency). Third, Hicks has been debarred, which would preclude him from receiving the benefits of a Postal Service contract. App. 0144–46. Thus, this Court could grant summary judgment for Defendants on the grounds that Hicks is no longer eligible for any remedy that he seeks. See Avtel Servs., Inc. v. United States, No. 06-5060, 2007 WL 2363341 (Fed. Cir. Aug. 21, 2007) (where contractor filed for bankruptcy during litigation court has no jurisdiction to hear a protest where it would not be able to afford remedy requested).

## CONCLUSION

Defendant-Intervenor seeks summary judgment and dismissal of the Complaint with prejudice. Hicks's claims, to be successful, would require this Court to unravel the decisions of the Illinois Circuit Court and Illinois Appellate Court, the Receiver's authorized actions, and the

---

the concern of Illinois court with regard to Mr. Hicks. See Froehlich v. J.R. Froelich Mfg. Co., 416 N.E.2d 1134 (Ill. App. Ct. 1981) (determining whether principal officer had "commingled" funds by using corporate funds for personal benefit). In any event, Mr. Hicks subsequently dismissed the district court case without prejudice.

Novation Agreement. To grant summary judgment to Defendants, the Court need only determine that the Receiver was given control over Contract 14024; that the Receiver was authorized to sell the assets including Contract 14024 and that the Receiver did so. The Court should decline Plaintiff's invitation to re-try issues that were before the Illinois courts and make new determinations regarding the sale of Contract 14024. The Illinois courts properly authorized the Receiver for Midwest Transit to administer, operate, control, and sell the assets and contract rights relating to the Buffalo Route contract. The Receiver lawfully sold Contract 14024 to a third party, Midwest Transport. Thereafter, the contract was novated by the Postal Service to Midwest Transport. Accordingly, Postal Service did not improperly novate or transfer Contract 14024 to Midwest Transport. The Court should therefore grant summary judgment in favor of Defendants.

October 26, 2007

Respectfully Submitted,

s/David P. Hendel

David P. Hendel
AKERMAN SENTERFITT WICKWIRE GAVIN
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22182
Phone: (703) 790-8750
Fax: (703) 448-1801

*Of Counsel:*

J. Michael Littlejohn
AKERMAN SENTERFITT WICKWIRE GAVIN
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22182
Phone: (703) 790-8750
Fax: (703) 448-1801

John E. Hilton
CARMODY, MACDONALD, P.C.
120 S. Central Ave, Suite 1800
St. Louis, MO 63105
Phone: (314) 854-8600

Fax: (314) 854-8660