# APPENDIX

**CIRCUIT COURT OF ILLINOIS**
James V. Hill
Associate Judge
Crawford County Courthouse
P.O. Box 88
Robinson, Illinois 62454

Telephone 618 544-7471
July 24, 2001

FILED
JUL 24 2001
Peggy Frederick
CIR. CT. CLERK. LAWRENCE CO., ILL

Hon. Peggy Frederick
Circuit Clerk
Lawrence County Courthouse
Lawrenceville, IL 62439

Re: Witters v. Hicks, Lawrence County, IL, No. 2000-L-2

Dear Ms. Frederick:

This letter constitutes the court's findings and rulings on the issues relating to the appointment of a custodian or receiver in the above-titled cause. Please furnish copies of this letter to all counsel of record.

Plaintiffs seek the appointment of a custodian or receiver pursuant to the provisions of 805 ILCS 5/12.56 and 5/12.60. Testimony and other evidence were presented over three days of hearing, and the parties were given opportunity to submit briefs. To date, neither the Circuit Clerk nor the presiding judge has been furnished a copy of defendants' brief, but Plaintiffs' brief has been provided.

805 ILCS 5/12.56 (a) (1) through (4) present situations relating to a non-public corporation which, if established, grant the court discretionary authority to order one or more of the remedies provided by 805 ILCS 5/12.56 (b) and its subsections. Subsection (6) thereof provides for the appointment of a custodian.

805 ILCS 5/12.60 grants to the court further authority in actions brought pursuant to 805 ILCS 5/12.56 including authority to appoint an interim receiver pursuant to subsection (d) thereof.

Defendants assert that they have commenced proceedings under 805 ILCS 5/12.56(f), which they assert should "trump" the request by Plaintiffs for the appointment of a custodian or receiver. The court rejects this argument and declines Defendants' request to

put the receivership proceedings "on hold" due to the precarious position of the corporation and the need to preserve its viability during these proceedings.

Likewise, Defendants have requested that Defendant Hicks be granted authority to hire independent counsel for the corporation, and that request and motion are denied as being presently moot, due to the action the court is taking herein.

The evidence has established that 805 ILCS 5/12.56 (a) (1) exists by reason of the fact that the directors are deadlocked, and the corporation's continuing business is threatened by its inability to obtain financing and the commencement of litigation against it by one of its creditor banks.

The evidence has established that 805 ILCS 12.56 (a) (3) exists by reason of the following:

Fraud: Rebate checks from fuel suppliers have been paid to Hicks, individually, and not to the corporation. Colorado Auto Auction rent checks have been paid to Hicks, individually, and not to the corporation.

Illegal activity: No records are kept relating to interest charged to employees on employee loans, rendering records upon which tax information is compiled and resulting tax returns inaccurate. Payroll tax deposits are not being made timely according to law.

Oppressive activity: Fuel supplier rebate checks and Colorado Auto Auction rent checks are paid to Hicks and not deposited into corporate accounts. Hicks, while a corporate officer and director, has submitted bids for mail routes for his own competing company (Mail-A-Way) while ceasing to continue to submit such bids for Midwest and while using a Midwest employee to prepare and submit the bids. Other use is made by Hicks of corporate employees for his private use while they are on the corporate payroll. Hicks' treats the Buffalo Route as his own and does not deposit the revenues received therefrom into Midwest accounts. The corporation pays Sumner Mobile Homes, a company owned by Hicks, rent of $20,000.00 per month without corporate authority or authority from Plaintiffs to do so.

Misapplication or waste of corporate assets: The above-mentioned checks retained by Hicks and not deposited into Midwest corporate accounts, the use of corporate employees for non-company business while on company time, and the payment of rent to Hicks' company without authority constitute misapplication of corporate assets.

The above evidence relating to the factors in 805 ILCS 5/12.56 (a) (1) through (4) stands largely uncontradicted by any evidence presented by Defendants.

Evidence was presented relating to other activities of Defendants which would also relate to establishing the existence of the factors in 805 ILSC 5/12.56 (a) (1) through (4), particularly including large sums paid to Hicks for trailers leased by him to the

corporation. Although Defendants did present some contradictory evidence on this, it did not rise to the level of sustaining the burden of proving fairness as required by 805 ILCS 5/8.60.

Hicks' activities in retaining company funds for himself and in paying himself and the company he owns corporate funds without complying with 805 ILCS 5/8.60 constitute self-dealing and conflicts of interest. Such conflicts and obligations on the part of corporate officers and directors are discussed in depth in Levy v. Markal Sales Corp., 268 Ill. App. 3d 355 (1st Dist. - 1994) and E.J. McKernan Co. v. Gregory, 252 Ill. App. 3d 514 ( 2nd Dist. - 1993).

Based upon the foregoing, this court finds that the corporation's business and existence are in immediate jeopardy if the status quo is maintained and third party intervention is not ordered. The court, therefore, orders the immediate appointment of an interim receiver as provided in 805 ILCS 5/12.60 (d) with plenary powers to run the business of Midwest Transit, Inc., pending the resolution of the current litigation or until further order of court.

The interim receiver shall have all powers granted him under 805 ILCS 5/12.60, including the power to apply for relief in the United States Bankruptcy Court on behalf of the corporation pursuant to subsection (f). All parties to this proceeding shall be enjoined from interfering with the interim receiver's activities in any manner and shall be mandatorily enjoined to grant him and his agents and others under his command unfettered access to the corporate premises, to all corporate property, and to all books, records and accounts of the corporation. The parties are further enjoined from interfering in any way with the interim receiver's sole control of the finances of the corporation and are enjoined from diverting any funds away from the corporation and its accounts, including all fuel supplier rebate checks, all rent checks from Colorado Auto Auction, and all income generated by the Buffalo Route. The parties are further mandatorily enjoined to provide all of such funds and any other corporate funds which may make their way into the possession of the parties', or any one or more of them, during the interim receivership immediately to the interim receiver.

The interim receiver shall have power to retain attorneys, accountants, appraisers, and others professional individuals to assist him in carrying out his duties, and the interim receiver and his professional assistants shall be entitled to reasonable compensation at corporate expense. The court waives any bond on the part of the interim receiver.

The court appoints Don Hoagland of 12517 E. 1050th Ave., Robinson, IL 62454 (telephone: 618 544-3217) as interim receiver. Attorneys Bertschy and Sommer are directed to jointly contact Mr. Hoagland to advise him of his appointment and to arrange with him and the Circuit Clerk for a mutually agreeable date in the near future (ideally on a Tuesday) for a status hearing in Lawrence County in order to further iron out the details

of the interim receiver's duties and to discuss future proceedings in this cause. It is anticipated by the court that this status hearing should last no more than one hour and should be solely for status with no substantive matters to be set for hearing at that time.

Attorney Bertschy is requested to prepare a written order appointing interim receiver and to submit it to other counsel for review and to the court for entry.

Sincerely,

James V. Hill

James V. Hill
Associate Judge

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
LAWRENCE COUNTY, ILLINOIS

| | | |
|---|---|---|
| C. MICHAEL WITTERS and DIANE WITTERS, INDIVIDUALLY and DERIVATIVELY ON BEHALF OF MIDWEST TRANSIT, INC., Plaintiffs, | ) | |
| v. | ) | LAW NO. 2000-L-2 |
| HAL D. HICKS and MIDWEST TRANSIT, INC., Defendants. | ) | |

FILED
JUL 25 2001
Peggy Frederick
CIRCUIT CLERK, LAWRENCE CO., ILL.

ORDER APPOINTING RECEIVER FOR MIDWEST TRANSIT, INC.

THIS CAUSE COMING on to be heard on Plaintiffs' Amended Motion for Appointment of Custodian/Receiver and Plaintiffs' Motion to Waive Bond, the parties present and having presented evidence, and the Court having issued a letter opinion dated July 24, 2001, with the Court's findings which findings are incorporated herein by reference, IT IS HEREBY ORDERED AS FOLLOWS:

I.

FINDINGS

1. Plaintiffs seek the appointment of a custodian or receiver pursuant to the provisions of 805 ILCS 5/12.56 and 5/12.60.

2. 805 ILCS 5/12.56(a)(1) through (4) present situations relating to a non-public corporation which, if established, grant the court discretionary authority to order one or more of the remedies provided by 805 ILCS 5/12.56(b) and its subsections. Specifically, subsection (6) thereof provides for the appointment of a custodian.

3. 805 ILCS 5/12.60 grants to the court further authority in actions brought pursuant to 805 ILCS 5/12.56 including authority to appoint an interim receiver pursuant to subsection (d) thereof.

FEHLROYSTER VOELKER &ALLEN
Suite 600
Adams Street
IL 61602-1352
(309) 676-3374
(309) 676-0400



CERTIFIED TRUE COPY
DATE July 25 2001

4. The evidence has established that 805 ILCS 5/12.56(a)(1) exists by reason of the fact that the directors are deadlocked and the corporation's continuing business is threatened by its inability to obtain financing and the commencement of litigation against it by one of its creditor banks.

5. The evidence has established that 805 ILCS 12.56(a)(3) exists by reason of the following:

A. Fraud has been perpetuated by Hal D. Hicks inasmuch as he has received monies from fuel supplier rebate checks that were to be paid to the corporation but were siphoned into his own personal accounts for his own personal use. Further, rent checks from the Colorado Auto Auction have been paid to Hal D. Hicks and not the corporation.

B. Illegal activities have occurred inasmuch as no records were or are kept relating to interest charged to employees on employee loans, rendering records upon which tax information is compiled and resulting tax returns inaccurate. Further, payroll tax deposits have not and are not being made in a timely manner according to the law.

C. Hal D. Hicks has caused oppressive activity to occur by the payment to him individually, and not the corporation, of rebate checks and Colorado Auto Auction rents. Further, Hicks, while a corporate officer and director of Midwest Transit, inc., has submitted bids for mail routes for his own competing company (Mail-A-Way) while ceasing submission of such bids for Midwest and while using a Midwest employee to prepare and submit the bids. Other use has been made by Hicks of Midwest's corporate employees for Hicks' private use while on the corporate payroll.

YLROYSTER
VOELKER
&ALLEN

Suite 600
Adams Street
61602-1352
) 676-3374
676-0400

Additionally, Hicks treats the Buffalo Route as his own business and does not deposit the revenues received from said route into Midwest's accounts. Finally, Midwest has been paying Hick's company, Sumner Mobile Homes, rent of $20,000.00 per month without corporate authority or authority from the Plaintiffs to do so.

6. The evidence has established that 805 ILCS 12.56(a)(4) exists by reason of the following:

A. The above-mentioned checks retained by Hicks and not deposited into Midwest's corporate accounts, the use of corporate employees for non-company business while on company time and the payment of rent to Hicks' company without authority constitute misapplication of corporate assets.

7. The Court heard evidence relating to other activities of Defendant which would relate to establishing the existence of the factors in 805 ILCS 5/12.56(a)(1) through (4); particularly including large sums paid to Hicks for trailers leased by him to the corporation. Although Defendants did present some contradictory evidence on this, it did not rise to the level of sustaining the burden of proving fairness as provided by 805 ILCS 5/8.60.

8. With respect to the factors in 805 ILCS 5/12.56(a)(1) through (4), the evidence relating to the factors stands largely uncontradicted by any evidence presented by Defendants.

9. Hicks' activities in retaining company funds for himself and in paying himself and the company he owns corporate funds without compliance with 805 ILCS 5/8.60 constitute self-dealing and conflicts of interest. *Levy v. Markal Sales Corp.*, 268

EYL ROYSTER
VOELKER
&ALLEN
... 600
... Adams Street
..., IL 61602-1352
(309) 676-5374
(309) 676-0400

Ill.App.3d 355 (1[st] Dist. - 1994) and E.J. *McKernan Co. v. Gregory*, 252 Ill.App.3d 514 (2[nd] Dist. - 1993).

10. The corporation's business and existence are in immediate jeopardy if the *status quo* is maintained and third party intervention is not ordered.

## II.

## Orders

A. This Court holds that it is in the best interest of Midwest Transit, Inc., its creditors, its shareholders and the U.S. Postal Service that an interim receiver be immediately appointed for Midwest Transit, Inc. ("Midwest"). The Court, therefore, orders the immediate appointment of a interim receiver as provided in 805 ILCS 5/12.60(d) with plenary powers to run the business of Midwest Transit, Inc. pending the resolution of the current litigation or under further order of court.

B. The interim receiver shall have all powers granted him under 805 ILCS 5/12.60, including the power to apply for relief in the United States Bankruptcy Court on behalf of the corporation pursuant to subsection (f).

C. All parties to this action shall be enjoined from interfering with the interim receiver's activities in any manner and shall be mandatorily enjoined to grant him and his agents and others under his command unfettered access to the corporate premises, to all corporate property, and to all books, records and accounts of the corporation. The parties are further enjoined from interfering in any way with the interim receiver's sole control of the finances of the corporation and are enjoined from diverting any funds away from the corporation and its accounts, including all fuel supplier rebate checks, all rent checks from the Colorado Auto Auction, and all income generated by the Buffalo Route.

HEYL ROYSTER VOELKER & ALLEN

D. The parties are further ordered to provide all of such funds and any other corporate funds which may make their way into the possession of the parties, or any one or more of them, during the interim receivership immediately to the interim receiver.

E. The interim receiver shall have power to retain attorneys, accountants, appraisers and other professional individuals to assist him in carrying out his duties, and the interim receiver and his professional assistants shall be entitled to reasonable compensation at corporate expenses.

F. The court waives any bond on the parties of interim receiver.

G. The court appoints Don Hoagland of 12517 East 1050th Avenue, Robinson, Illinois, 62454 (telephone: (618) 544-3217) as interim receiver.

H. The court directs Attorneys Timothy L. Bertschy and Lyndon P. Sommer to directly and jointly contact Mr. Hoagland to advise him of his appointment and to arrange with him and the Circuit Clerk a mutually satisfactory date in the near future for a status hearing in Lawrence County in order to further determine the details of the interim receiver's duties and to discuss future proceedings in this case. The status hearing should last no more than one hour and will be solely for a review of status with no substantive matters to be set for hearing at that time.

Dated: July 25, 2001

James V. Hill
THE HONORABLE JAMES V. HILL

TLB/swe
G:\12\K9712\K9712PMI 088 Receiver Order.wpd

LROYSTER
OELKER
ALLEN

e 600
Adams Street
IL 61602-1352
9) 676-3374
76-0100

COPY

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
LAWRENCE COUNTY, ILLINOIS

| | | |
|---|---|---|
| C. MICHAEL WITTERS AND DIANE WITTERS, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF MIDWEST TRANSIT, INC., | ) | |
| Plaintiffs, | ) | |
| vs. | ) | Case No. 00-L-2 |
| HAL D. HICKS and MIDWEST TRANSIT, INC., | ) | |
| Defendants. | ) | |

FILED
AUG 24 2001
Peggy Frederick
CIRCUIT CLERK, LAWRENCE CO., ILL.

**ORDER**

This cause has been heard upon Motion for Clarification filed herein by Don Hoagland, Receiver of Midwest Transit, Inc. The Court has read and considered the motion, heard arguments of counsel, and is fully advised in the premises.

IT IS HEREBY ORDERED that the receiver, Don Hoagland is granted the authority to negotiate the sale of the company ~~with full authority to sell~~ to the highest bidder with final approval to be obtained from the Court. JVH

Dated: 8/24/01

ENTER: James V. Hale
JUDGE



EXHIBIT
A

(c) Differing site conditions;

(d) Actual or constructive changes or delays;

(e) Delay in providing funding;

(f) Delay in inspections;

(g) Delay in issuing changes;

(h) Delay in providing Postal Service-furnished equipment; and

(i) Failure to perform by other Postal Service suppliers.

2. The supplier has the burden of proof in establishing the basis for the equitable adjustment required to overcome the delay.

6.5.3.d *Concurrent Causes*. When a delay is attributable to both the Postal Service and the supplier, a contract delivery or performance schedule adjustment should not normally be granted for a period of delay caused at least in part by actions or failures on the part of the supplier. (But damages may not be assessed against the supplier in these situations.)

6.5.3.e *Acceleration*

1. The Postal Service has the right to require accelerated performance under paragraph c of Clause 4-1. This right should be exercised only when required to maintain the operational capability of the Postal Service.

2. Contracting officers must document the specific facts that require acceleration of performance and the estimated impact on contract price. Whenever possible, the contracting officer must negotiate acceleration actions in advance.

3. Contracting officers should be alert to constructive acceleration situations. Constructive acceleration occurs when the Postal Service does not agree to a delivery or performance schedule extension to which the supplier is entitled (or is later determined to be entitled), causing the supplier to accelerate performance. Constructive acceleration may result in a claim for a price increase.

## 6.5.4 Novation and Change-of-Name Agreements

6.5.4.a *Definitions*

1. *Change-of-name agreements.* Agreements signed by the supplier and the Postal Service that recognize a legal change of the supplier's name without otherwise altering the original contract.

2. *Novation agreements*. Agreements signed by the supplier (the transferor), the successor in interest (transferee), and the Postal Service, by which, among other things, the transferor guarantees performance of the contract, the transferee assumes all obligations under the contract, and the Postal Service recognizes the transfer of the contract and related assets.

6.5.4.b *Responsibility*

1. The contracting officer is responsible for:
   - (a) Determining, in consultation with counsel, whether to permit contract novation; and
   - (b) Processing and signing novation and change-of-name agreements.
2. When multiple contracts of one supplier or transfers from several transferors to one transferee are involved, the contracting officer responsible for the largest unsettled (unbilled plus billed-but-unpaid) contract dollar balance is responsible for executing the novation or change-of-name agreement.

6.5.4.c *Novation Policy*

1. The Postal Service generally prohibits contract novation (see paragraph b of Clause 4-1, and Clause B-8, *Assignment of Claims*). However, the Postal Service may recognize a third party as the successor in interest when that party's interest arises out of the transfer of:
   - (a) All the supplier's assets; or
   - (b) The entire portion of the assets involved in performing the contract.
2. Situations in which novation may be permitted include but are not limited to:
   - (a) Sale of the supplier's assets with a provision for assuming liabilities;
   - (b) Transfer of assets as part of a merger or corporate consolidation; and
   - (c) Incorporation of a proprietorship or partnership, or formation of a partnership.
3. Before concurring in a contract novation, the contracting officer must determine the capability (see 2.1.9.c) of the successor in interest.
4. When it is not in the Postal Service's interest to concur in a contract novation, the original supplier remains responsible for performance, and the contract may be terminated for default for failure to perform.

6.5.4.d *Change of Name.* A change-of-name agreement is appropriate when only a change of the supplier's name is involved, and the rights and obligations of the parties remain unaffected. The agreement must be signed by the contracting officer and the supplier modifying all existing contracts between the parties to reflect the name change.

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
LAWRENCE COUNTY, ILLINOIS

FILED
MAR 25 2002
[signature]
CIRCUIT CLERK, LAWRENCE CO., ILL.

C. MICHAEL WITTERS AND DIANE WITTERS, )
INDIVIDUALLY AND DERIVATIVELY ON )
BEHALF OF MIDWEST TRANSIT, INC., )
)
Plaintiffs, )
)
v. ) Law No. 2000-L-2
)
HAL D. HICKS AND MIDWEST TRANSIT, INC., )
)
Defendants. )

**ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF CORPORATE DISSOLUTION AND THE APPOINTMENT OF A LIQUIDATING RECEIVER**

CAUSE COMING to be heard upon Plaintiffs' Motion for Partial Summary Judgment on the Issue of Corporate Dissolution and the Appointment of a Liquidating Receiver , the parties present by counsel, and the court being fully advised, IT IS HEREBY ORDERED AS FOLLOWS:

1. That said motion is granted;

2. That Midwest Transit, Inc. shall be dissolved;

3. That the Court, after considering all facts presented before it in this and prior hearings and having considered the financial conditions of the company, finds that no remedy specified in subdivisions (1)–(11) of 805 ILCS 5/12.56(b), or any other alternative remedy, is sufficient to resolve the matters in dispute;

4. That Don Hoagland is appointed as the liquidating receiver pursuant to 805 ILCS 5/12.56 and 5/12.60;

5. That the liquidating receiver shall have the authority to sell, convey and dispose of all or any part of the assets of Midwest Transit, Inc., either at public or private sale,

HEYLROYSTER
VOELKER
&ALLEN
Suite 600
W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

and to take any other action as may be necessary to wind up and liquidate the corporation's business and affairs under 805 ILCS 5/12.30 and to notify known claimants under 805 ILCS 5/12.75. The liquidating receiver shall make a report to this court of the actions it has taken on a monthly basis. The liquidating receiver shall further advise this court within 30 days hereof of its plan to liquidate the corporation within six months of this date and obtain court approval of same. Any sale of the mail contracts or any other asset of the company in excess of $5,000.00, or any compromise of debt in excess of $5,000.00, shall be subject to prior approval by the court. The liquidating receiver shall continue to operate mail contracts of the corporation for such time period as required to effectively sell or convey such contracts at maximum value to the company and shall not cease such operations without leave of court;

6. That the Court further finds that bond is not necessary. The facts established in the interim hearing have not been altered or changed. Recent filings have, if anything, strengthened the case for a liquidating receivership. No danger is threatened to the company. The company, which was previously insolvent, is now making a profit. All asset sales in excess of $5,000.00 and all debt compromises are subject to prior court approval, and the liquidating receiver is to obtain prior court approval of his plan of dissolution;

7. The liquidating receiver shall have all powers granted him under 805 ILCS 5/12.60, including the power to apply for relief in the United States Bankruptcy Court on behalf of the corporation pursuant to subsection (f).

8. All parties to this action (except Fifth Third Bank, which is allowed to pursue any legal remedies it might have against Midwest Transit, Inc.) shall be enjoined from

HEYL ROYSTER
VOELKER
&ALLEN
Suite 600
..W. Adams Street
eoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

interfering with the liquidating receiver's activities in any manner and shall be mandatorily enjoined to grant him and his agents and others under his command unfettered access to the corporate premises, to all corporate property, and to all books, records and accounts of the corporation. The parties are further enjoined from interfering in any way with the liquidating receiver's sole control of the finances of the corporation and are enjoined from diverting any funds away from the corporation and its accounts, including all fuel supplier rebate checks, all rent checks from the Colorado Auto Auction, and all income generated by the Buffalo Route.

9. The parties (with the exception of Fifth Third Bank) are further ordered to provide all of such funds and any other corporate funds which may make their way into the possession of the parties, or any one or more of them, during the liquidating receivership immediately to the liquidating receiver.

10. The liquidating receiver shall have power to retain attorneys, accountants, appraisers and other professional individuals to assist him in carrying out his duties, and the liquidating receiver and his professional assistants shall be entitled to reasonable compensation at corporate expenses.

11. There is no just reason to delay either enforcement or appeal or both and this decision is thus certified for immediate appeal under Supreme Court Rule 304(c);

12. That the issue of attorney fees is reserved; and

13. That the clerk of the court shall provide those notices required by 805 ILCS 5/12.65.

Entered: 3/25/02

[signature]
The Honorable James V. Hill

TLB/rwe
G:\12\K9712\Orders\K9712PM1 104 Order re MSJ on corporate dissolution.wpd

HEYL ROYSTER VOELKER & ALLEN
Suite 600
[illegible]W. Adams Street
Peoria, IL 61602-1352
Fax (309) 676-3374
(309) 676-0400

CARMODY MacDONALD P.C. - DRAFT
December 27, 2002 - 1:57 pm

December 27, 2002

*VIA FACSIMILE 618-242-1170*
*and FEDERAL EXPRESS*

Mr. Don Hoagland,
Receiver of Midwest Transit, Inc.
c/o Mr. Terry Sharp
Law Office of Terry Sharp, PC
1115 Harrison
P.O. Box 906
Mr. Vernon, Illinois 62864

**RE: Term Sheet Regarding Purchase of Midwest Transit, Inc.'s Assets**

Dear Mr. Hoagland:

The purpose of this letter ("Letter of Intent") is to outline the terms upon which two (2) companies owned by certain employees of Midwest Transit, Inc. (Midwest Transportation Services, Inc., a Delaware corporation and Midwest Transport, Inc., a Delaware corporation, hereinafter collectively referred to as the "Buyer") will purchase the Assets described herein from Midwest Transit, Inc., an Illinois corporation in receivership (the "Seller"). The names and structure of the entities comprising "Buyer" may change prior to Closing (as hereinafter defined). Buyer and Seller will be referred to collectively as the "Parties" and the sale of Assets described herein will be referred to as the "Acquisition". All of the terms of the Acquisition will be set forth in a Definitive Asset Purchase Agreement ("Definitive Agreement") prepared by Buyer's counsel and acceptable to Seller and Seller's counsel. The Definitive Agreement will be the binding agreement between Buyer and Seller with respect to the Acquisition and will include the following terms:

1. *Basic Transaction*. The Seller will sell all of its assets which are useful or necessary to operate a trucking company specifically including the "Included Assets" described below and specifically excluding the "Excluded Assets"



{4644\0001\148958.DOC.13}

EXHIBIT D

described below (all of the Seller's assets so determined are hereinafter collectively referred to as the "Assets").

*LIST OF INCLUDED ASSETS*

2. *All equipment and all other assets of every type, nature and description (except for the Excluded Assets described below) owned by Midwest Transit, Inc. ("Midwest") useful or necessary to operate a trucking company including:*

(a) *Tractors (Midwest titled)*
(b) *Trucks (Midwest titled)*
(c) *Vans (Midwest titled)*
(d) *Autos (Midwest titled)*
(e) *Trailers (including the leased trailers with Rightway Trucking, Inc. and KBK, LLC)*
(f) *Parts (all parts and inventory at all Midwest locations)*
(g) *Equipment and Tools (owned, etc. for use in working on equipment)*
(h) *Tires and rims*
(i) *Trailer parts*

1. *Effingham facility (if the facility does not pass phase 2 EPA investigation, then the facility will be leased to Buyer for 6 months rent free). Failure to pass EPA phase 2 investigation, will result in a reduction of the purchase price by $250,000.*

2. *All postal routes.*

3. *Freight contracts.*

4. *Insurance/license(s), etc, to be transferred at Closing as is.*

5. *Office equipment/supplies/computer/furniture/etc. at all Midwest locations.*

6. *Transfer of leases, deposits, etc., equipment and terminals. This excludes any lease in Hal D. Hicks' name only or any affiliate's (other than Midwest) name.*

7. *Use of Sumner facility for a period of six (6) months rent free effective as of Closing. Buyer shall also receive an option to lease the Sumner facility for an additional three (3) months at a lease amount of $3,000 per month.*

8. *All computer software currently being utilized by Midwest Transit, Inc.*

*LIST OF EXCLUDED ASSETS*

*Cash*

*Bank Accounts and Deposits*

*Receivables*

*All real estate except: (i) Effingham, Illinois, and (ii) all real estate leases described in Exhibit A.*

*All Leases in Hal Hick's name described in Section 7 of Exhibit A.*

Except as expressly provided herein, the Assets will be conveyed by Seller to Buyer free and clear of all liens and Buyer will not assume any of the liabilities of the Seller, including, without limitation, Seller's bank loans, Seller's accounts payable, accrued expenses, employee benefit obligations, collective bargaining agreements (including any pending agreements), lease obligations, indebtedness, Department of Labor related liabilities, environmental liabilities, and employee pension liabilities and obligations. The closing of the Acquisition (the "Closing") will occur on February 21, 2003 at a place mutually agreed by the parties, or if the United States Postal Services has not approved the novations as described in Section 5(i) of this Letter of Intent, at such other date as Seller and Buyer may mutually agree upon.

9. *Total Purchase Price.* The total purchase price paid in connection with the Acquisition will be Ten Million Eight Hundred Thousand Dollars ($10,800,000) and will be paid as follows:

(a) Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000) in cash at Closing which will be paid by wire transfer to Sellers; and

(b) Assumption of the following debts in amounts which approximates amounts listed:

(i) assumption of Fifth Third Note and Judgment with respect thereto, $2,500,000;

(ii) assumption of accrued payroll and accrued vacation costs, $1,500,000;

(iii) assumption of Rightway Trucking, Inc. Lease, $700,000;

(iv) assumption of Buddy and Ed Trailer Lease, $650,000 to replace 100 trailers currently used by Midwest Transit, Inc. and owned by Hal Hicks; and

(v) assumption of KBK, LLC Lease, $550,000;

(c) An unsecured interest free promissory note in the amount of $2,150,000 which provides for $1,000,000 to be paid on March 1, 2004, and $1,150,000 to be paid on March 1, 2005. The $2,150,000 unsecured interest free promissory note described above shall be subject to a right of offset whereby Buyer may offset any breach of the Definitive Agreement or the Noncompete Agreements against debt evidenced by the note. If Seller believes it to be in the best interest of Seller, Seller's shareholders or otherwise, Seller may assign a portion or all of the payments under said Note to Seller's shareholders, or either of them, as payment for the Noncompete Agreements. Said amount of the Note herein shall be reduced by any amounts, not to exceed $30,000 per month, paid by Buyer to Seller's Receiver pursuant to an order of the Court regarding receivership expenses.

Buyer shall have thirty (30) days to return all tractors owned by Hal Hicks and ninety (90) days to return all trailers owned by Hal Hicks. Seller shall agree to reimburse Buyer for all reasonable costs of returning the tractors and trailers described in the previous sentence.

1. *Noncompetition, Nonsolicitation and Confidentiality Agreements*. At the Closing, Seller, C. Michael Witters, Diane Witters, his wife, and Hal Hicks will each execute a five (5) year Noncompetition, Nonsolicitation and Confidentiality Agreement (collectively the "Noncompete Agreement(s)") in favor of Buyer prohibiting any of them, directly or indirectly, from competing with, soliciting or accepting any of the current eighty-nine (89) U.S. Postal Service Mail Contracts described on Exhibit A attached hereto ("USPS Contracts"). In lieu of such an agreement executed by C. Michael Witters, Diane Witters, his wife, and/or Hal Hicks, the Buyer will accept an order from the Court (as hereinafter defined), in form and substance acceptable to Buyer, which contains similar provisions with respect to any or all of such persons.

2. *Seller's Employees*. At the Closing, Buyer will hire, in its sole and complete discretion, such of Seller's employees as Buyer deems appropriate under the circumstances. Buyer shall not be required to hire any number or percentage of Seller's employees and Buyer may "pick and choose" such of Seller's employees as Buyer determines in Buyer's sole and complete discretion. Buyer will not be responsible for any employee related liabilities which accrue on or before Closing.

3. *Conditions Precedent to Closing*. The Closing of the Acquisition shall be conditioned upon and subject to each of the following conditions precedent which shall be acceptable to Buyer in Buyer's sole and complete discretion. The earlier of the waiver by Buyer of each of the conditions or the satisfaction of each of the following conditions, or the Closing shall be referred to herein as the "Condition Expiration Date".

(i) Seller, at its sole cost and expense, will cause all and not less than all of the USPS Contracts currently owned and operated by Seller (89 contracts) to be transferred to Buyer through valid and binding novations with the U.S. Postal Service. In addition, Buyer shall determine in its sole discretion that (a) there are no material defaults under any of the USPS Contracts; (b) the parties to the USPS Contracts have complied in all respects with all of the terms and performed in all respects with all the terms of the USPS Contracts; (c) neither Seller nor any other person has received any formal or informal notice of unsatisfactory performance under the USPS Contracts; (d) the United States Postal Service has provided satisfactory assurances, in form acceptable to Buyer in Buyer's sole discretion, of Buyer's ability to renew existing USPS contracts and bid new USPS Contracts successfully; and (e) that upon completion of novation of the USPS Contracts, Buyer will own clear title to the USPS Contracts free and clear of all liens, claims and encumbrances of any kind whatsoever, and all such USPS Contracts will be valid, binding and enforceable in accordance with their terms between Buyer as contractor and the U.S. Postal Service, and no such USPS Contract shall be subject to being set aside for any reason other than Buyer's failure to perform the contract in accordance with its terms.

(ii) The written approval of the Circuit Court of the Second Judicial Circuit of Lawrence County, Illinois (the "Court") and the U.S. Postal Service,

of this Letter of Intent, the Definitive Agreement and all transactions contemplated herein and therein. In addition, C. Michael Witters and Diane Witters, his wife, will consent in writing to this Letter of Intent, the Definitive Agreement, and all transactions contemplated herein and therein. As a condition to Closing, Buyer shall have satisfied itself that the other shareholders of Seller do not intend to contest or set aside any of the transactions contemplated herein. We understand that Mr. Hal Hicks has appealed to Illinois appellate courts certain rulings of the Court with respect to, *inter alia*, your receivership, and has instituted legal action outside of Illinois relating to certain of Seller's assets. We further understand your position that these appeals and any such suits are without merit. However, Buyer reserves the right prior to the Closing to evaluate independently any such appeals, suits or threats of action and their potential effects on the transactions contemplated by this Letter of Intent including whether such appeals and/or suits are final and non-appealable. Any order of the Court relating to this Letter of Intent and the sale of assets contemplated hereunder must be acceptable to Buyer.

(iii) The Parties reaching a Definitive Agreement in form and substance satisfactory to each of them and their respective legal counsel with such representations, warranties, indemnities and other provisions as may be recommended by them.

(iv) The performance of Phase I, and if deemed appropriate by Buyer, Phase II environmental assessments, all at the expense of Seller, with respect to all facilities of Seller. The results of all such assessments must be acceptable to Buyer in Buyer's sole and complete discretion.

(v) Any approvals of the Department of Transportation, Interstate Commerce Commission, and all other governmental, quasi-governmental and regulatory authorities which are useful or necessary for Seller to conduct a trucking business in connection with the transactions contemplated herein.

1. *Other Terms*. The Definitive Agreement shall release, indemnify and hold harmless Buyer, Ken Hohlbaugh, Ed Smith, M.R. "Buddy" Relihan, John S. Elmore, and all other equity owners of Buyer, from any and all lawsuits, issues, damages, losses, and claims arising out of or in connection with the receivership

and/or employment with Seller at all times prior to Closing.

In the event of any dispute regarding the Definitive Agreement or any matter contemplated therein, such dispute shall be settled by binding arbitration.

7. *Costs*. The Buyer and the Seller will be responsible for and bear all of their own costs and expenses incurred at any time in connection with pursuing or consummating the Acquisition, provided that the Seller shall pay (i) the first $25,000 of Buyer's attorney's, counsel's, accountant's and other advisor's fees and expenses incurred in connection with the Acquisition, and (ii) if the Acquisition is appealed, then the next $25,000 of Buyer's attorney's, counsel's, accountant's and other advisor's fees and expenses incurred in connection with the Acquisition. Seller shall pay such fees even if the Acquisition fails to close for any reason. Buyer will be responsible for any of Buyer's attorney's, counsel's, accountant's and other advisor's fees and expenses in excess of $50,000. Except as described herein, there will not be any broker's or finder's fees in connection with the consummation and Closing of the Acquisition.

8. *Binding And Nonbinding Provisions, and Governing Law.* This Letter of Intent sets forth an outline of certain terms of the Definitive Agreement but, except as provided below, does not constitute a legally binding agreement of Buyer and Seller. The Buyer and Seller will be legally bound to conclude the Acquisition only upon the execution of the Definitive Agreement by all of the parties to it and the approval of the Definitive Agreement by all necessary corporate actions and authorizations. Only Sections 7 through 12 of this Letter of Intent constitute legally binding agreements of Buyer and Seller, and except as expressly set forth herein, no past or future action, course of conduct, or failure to act relating to the possible Acquisition, or relating to the negotiation of the terms of the Acquisition or any Definitive Agreement, will give rise to or serve as a basis for any obligation or other liability on the part of the Parties. This Letter of Intent shall be governed by and construed in accordance with the laws of the State of Illinois without giving effect to its principles of choice of law.

9. *Liquidated Damages*. The Definitive Agreement shall provide that the Closing of the transaction contemplated herein shall be subject to the Court approving a different offer with respect to the sale of Seller's assets at any time prior to ten (10) days prior to the Closing. If the Court approves any such other offer, then Buyer shall immediately receive, in cash, the sum of One Hundred Thousand

Dollars ($100,000) in liquidated damages which is intended to compensate Buyer for Buyer's costs, expenses, and opportunities foregone in connection with the Acquisition. The parties agree that liquidated damages are appropriate because actual damages are difficult to ascertain. The parties further agree that the amount of liquidated damages described in this paragraph are not a penalty and are the parties' best effort to estimate the actual damages which would be incurred by Buyer.

10. *Counterparts*. This Letter of Intent may be executed in one or more counterparts, each of which will be deemed to be an original copy and all of which, when taken together, will be deemed to constitute one and the same agreement. This Letter of Intent may be executed by use of counterpart signature pages.

11. *Assignment*. No Party may assign this Letter of Intent or any of its rights or interest herein to any other person without the written consent of the other Party, except that Buyer may assign its rights hereunder to any affiliate of Buyer (including any entity(ies) under common ownership with Buyer) without Seller's consent.

12. *Entire Agreement.* This Letter of Intent constitutes the entire agreement between the Parties, and supersedes all prior oral or written agreements, understandings, representations and warranties, and courses of conduct and dealings between the parties on the subject matter hereof. Except as otherwise provided herein, this Letter of Intent may be amended or modified only by a writing executed by both Parties.

If you are in agreement with the foregoing, please sign and return one copy by the close of business ten (10) days after the execution of this Letter of Intent by Buyer, which thereupon will constitute our agreement with respect to its subject matter.

**[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]**

Mr. Don Hoagland
December 27, 2002
Page 9

COUNTERPART SIGNATURE PAGE TO
LETTER OF INTENT DATED ______________, 2002

"Seller"

Midwest Transit, Inc., an Illinois corporation

By: ______________________
Don Hoagland, Receiver

Date: 12-27-02

**COUNTERPART SIGNATURE PAGE TO
LETTER OF INTENT DATED ____________, 2002**

"Buyer"

Midwest Transport, Inc., a Delaware corporation

By: [signature]

Printed Name: Ken Hohlbaugh

Title: General mgr

Date: 12/26/02

Midwest Transportation Services, Inc., a Delaware corporation

By: [signature]

Printed Name: Ken Hohlbaugh

Title: General mgr

Date: 12/26/02



{4644\0001\52213 DOC }{10-14\0001\48958.DOC 0}

**EXHIBIT A**

**LIST OF USPS CONTRACTS**

**[LIST]**

Route
015SE
~~030LJ~~
030PJ
030VJ
~~8013~~
8529
10112
~~10216~~
137CE
14024
~~14041~~
14070
14075
~~140CE~~
140LO
144CJ
~~144EJ~~
14737
14813
~~15021~~
15030
15037
~~15116~~
15117
17039
~~171LO~~
189MR
189MS
~~207AE~~
207BE
207CK
~~207FE~~
207HE
207JE
~~207KE~~
207L1
207ME
~~207QE~~
24011
32213
~~323CE~~
350DE
350EE
~~38125~~
42334
42335
~~440MR~~
440NS
465L2
~~47611~~

47630
47631
~~47634~~
47890
48010
~~500LO~~
50318
50323
~~50324~~
530MO
54112
~~60213~~
60518
60537
~~60629~~
607L3
607L6
~~607MO~~
62834
62835
~~628AO~~
62935
62936
~~63290~~
663YO
680NO
730CE
740AR
740IR
740LR
740MS
740PR
~~740RR~~
740SR
740TR
740WR
760L8
98011
~~980L3~~
980AK
~~980Y2~~

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
LAWRENCE COUNTY, ILLINOIS

| | |
|---|---|
| C. MICHAEL WITTERS AND DIANE WITTERS, INDIVIDUALLY AND DERIVATIVELY ON BEHALF OF MIDWEST TRANSIT, INC., Plaintiffs, | |
| vs. | Case No. 00-L-2 |
| HAL D. HICKS and MIDWEST TRANSIT, INC., Defendants. | FILED DEC 30 2002 Peggy Frederick CIRCUIT CLERK, LAWRENCE CO., ILL. |
| FIFTH THIRD BANK, INDIANA, Intervener. | |

**MOTION FOR AUTHORITY TO ENTER INTO CONTACT FOR SALE**

Now comes Don Hoagland, Receiver of Midwest Transit, Inc., by and through his undersigned attorneys, the Law Office of Terry Sharp, P.C., and for his Motion for Authority to Enter into Contract for Sale, respectfully states as follows:

1. Don Hoagland was appointed interim receiver of Midwest Transit, Inc., on July 25, 2001.

2. On March 25, 2002, Don Hoagland was appointed liquidating receiver of Midwest Transit, Inc.

3. On September 4, 2002, the Fifth District Appellate Court approved by Rule 23 Order and later by issuing a written opinion, the appointment of Don Hoagland as interim receiver of Midwest Transit, Inc.

4. On August 24, 2001, Don Hoagland was granted authority to negotiate the sale of

Midwest Transit, Inc., to the highest bidder with final approval to be obtained from this Court. See the Order of August 24, 2001, attached hereto and marked Exhibit A, and by reference made a part hereof.

5. That since the matters set forth above, Midwest Transit, Inc., Fifth Third Bank has obtained a Rule 54(b) judgment of $2,495,563.63 against Midwest Transit, Inc., a copy of which is attached hereto and marked Exhibit B, and by reference made a part hereof.

6. On December 19, 2002, Midwest Transit, Inc., received from the United States Department of Labor, Wage and Hour Division, notification that the Department of Labor will accept the sum of $2,000,000.00 in compromise of a claim against Midwest Transit, Inc., in an amount excess of $4,000,000.00. See letter from the Department of Labor attached hereto and marked as Exhibit C, and by reference made a part hereof.

7. The Receiver has received an offer to purchase Midwest Transit, Inc., for the sum of $10,800,000.00, subject to certain terms and conditions. See Letter of Intent attached hereto and marked as Exhibit D, and by reference made a part hereof.

8. The Receiver believes this offer is in the best interest of Midwest Transit, Inc., and asks the Court to enter an order granting the Receiver authority to enter into said transaction.

Wherefore, Don Hoagland, Receiver of Midwest Transit, Inc., respectfully prays that this Court will enter an Order allowing him to enter into a definitive agreement contemplated in the Letter of Intent which is attached hereto as Exhibit C.

DON HOAGLAND, Receiver of Midwest Transit, Inc., by LAW OFFICE OF TERRY SHARP, P.C., his attorneys,

By ______________________
Terry Sharp

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document(s) were placed in a sealed envelope, clearly addressed with proper postage prepaid and deposited in the United States Mail at 6:00 p.m. this 27 day of December, 2002, and via Facsimile, to the following:

Timothy L. Bertschy 309-676-3374 (fax)
Heyl Royster Voelker & Allen
124 S.W. Adams Street, Suite 600
Peoria, IL 61602

Lyndon P. Sommer 314-241-7604 (fax)
Sandberg, Phoenix & von Gontard
One City Centre - 15th Floor
St. Louis, MO 63101

Terry G. Farmer 812-421-4936 (fax)
Bamberger, Foreman, Oswald & Hahn
P.O. Box 657
Evansville, IN 47704

______________________

LAW OFFICE OF
TERRY SHARP, P.C.
1115 Harrison
P.O. Box 906
Mt. Vernon, IL 62864
(618)242-0246
(618)242-1170 facsimile
law@lotsharp.com

COPY

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
LAWRENCE COUNTY, ILLINOIS

C. MICHAEL WITTERS AND DIANE WITTERS, )
INDIVIDUALLY AND DERIVATIVELY ON )
BEHALF OF MIDWEST TRANSIT, INC., )
)
Plaintiffs, )
)
vs. ) Case No. 00-L-2
)
)
HAL D. HICKS and )
MIDWEST TRANSIT, INC., )
)
Defendants. )

FILED
AUG 24 2001
Peggy Frederick
CIRCUIT CLERK. LAWRENCE CO., ILL.

ORDER

This cause has been heard upon Motion for Clarification filed herein by Don Hoagland, Receiver of Midwest Transit, Inc. The Court has read and considered the motion, heard arguments of counsel, and is fully advised in the premises.

IT IS HEREBY ORDERED that the receiver, Don Hoagland is granted the authority to negotiate the sale of the company ~~with full authority to sell~~ JVA to the highest bidder with the final approval to be obtained from the Court.

Dated: 8/24/01

ENTER: James V. [signature]
JUDGE

EXHIBIT
A

COPY

RECEIVED
NOV 4 2002
TERRY SHARP, P.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FILED
02 OCT 30 AM 9:21
CLERK
U.S. DISTRICT COURT
SOUTHERN DISTRICT IL
[illegible]

FIFTH THIRD BANK, INDIANA, formerly known as Civitas Bank, formerly known as Citizens Bank of Illinois, N.A.

Plaintiff,

vs.

MIDWEST TRANSIT, INC., by its Court Appointed Receiver, Donald Hoagland, pursuant to an Order of the Circuit Court of the Second Judicial Circuit of Lawrence County, Illinois, in Cause No. 00-L-2; HAL D. HICKS; and UNKNOWN OWNERS AND NON-RECORD CLAIMANT,

Defendants.

No. 01-CV-4215-JPG

Removed from the Circuit Court of Wabash County, Illinois
Cause No. 01-CH-12

**RULE 54(b) JUDGMENT & ORDER DIRECTING SALE OF MORTGAGED PROPERTY**

This case comes before the Court on the plaintiff, Fifth Third Bank, Indiana's Motion for Summary Judgment and the Court being fully advised in the premises finds that there is no genuine issue of material fact and summary judgment is appropriate under the circumstances under Counts I, II and IV of First Amended Complaint and the Motion for Summary Judgment. Count III has been dismissed without prejudice by a previous order of this Court. (Doc. 41).

Moreover, although not all the claims in this case have been resolved, the Court has determined that there is no just reason to delay the entry of judgment on the plaintiff's claims encompassed by Counts I, II and IV of the First Amended Complaint, and, therefore, **IT IS HEREBY ORDERED AND ADJUDGED** as follows:

EXHIBIT
B

App. 0033



48

I. On Count I of the First Amended Complaint, Summary Judgment is entered in favor of Plaintiff, Fifth Third Bank, Indiana, against Defendant, Midwest Transit, Inc., by its Court Appointed Receiver, Donald Hoagland, pursuant to an Order of the Circuit Court of the Second Judicial Circuit, Lawrence County, Illinois in Cause No. 00-L-2 in the amount of $2,495,563.63, under the promissory note executed and delivered to the Plaintiff by the Defendant, Midwest Transit, Inc., dated December 31, 2000, attached to the First Amended Complaint as Exhibit "A" ("Note").

II. On Count II of the First Amended Complaint, Summary Judgment of foreclosure is entered in favor of Plaintiff, Fifth Third Bank, Indiana against the Defendant, Midwest Transit, Inc. by its Court Appointed Receiver, Donald Hoagland pursuant to an Order of the Circuit Court of the Second Judicial Circuit, Lawrence County, Illinois in Cause No. 00-L-2, Hal D. Hicks and Unknown Owners and Non-Record Claimants as set forth in the attached Summary Judgment of Foreclosure, under the Mortgage executed and delivered to the Plaintiff by the Defendant, Hal D. Hicks, dated September 9, 1998 ("Mortgage"), attached to the First Amended Complaint as Exhibit "B" as to the real estate described therein ("Real Estate"), as set forth below:

A. The following Defendants are ordered defaulted: Unknown Owners, and Non-Record Claimants.

B. Unless, within time allowed by law, the Defendant, Hal D. Hicks, pays to the Plaintiff the amounts set forth in paragraph I. of this Judgment plus interest thereon at the statutory rate hereafter; or, if the Real Estate is not redeemed within the time allowed by law as prescribed by the Illinois Mortgage Foreclosure Law; and, after the expiration of the reinstatement period provided for by the Illinois Mortgage Foreclosure Law, the Real Estate with all improvements, fixtures, and appurtenances thereto, or so much of said Real Estate which may

be divisible and sold separately without material injury to the parties in interest, shall be sold at public auction to the highest bidder for cash.

C. In default of such payment in accordance with this Judgment, the Real Estate shall be sold as directed herein, to satisfy the amount due to the Plaintiff as set forth in paragraph I of this Judgment, together with interest thereon at the statutory rate from the date of this Judgment.

D. In the event the Plaintiff is a purchaser of the Real Estate at such sale, the Plaintiff may offset against the purchase price of such Real Estate the amounts due under paragraph I of this Judgment.

E. In the event of such sale and the failure of the person entitled thereto to redeem prior to such sale pursuant to statutory provisions, the Defendants made parties to the foreclosure in accordance with statutory provisions, and all non-record claimants given notice of the foreclosure in accordance with statutory provisions, and all persons claiming by, through or under them, and each and any and all of them, shall be forever barred and foreclosed of any right, title, interest, claim, lien or right to redeem in and to Real Estate.

F. If no redemption is made prior to such sale, a deed shall be issued to the purchaser according to law and such purchaser shall be let into possession of the Real Estate in accordance with statutory provisions.

G. Upon expiration of the redemption period, the Real Estate shall be sold at a sale as provided in this Summary Judgment of Foreclosure.

H. That sale of the Real Estate shall be by public auction.

I. The sale shall be by open verbal bid.

J. The sale shall be conducted by the U.S. Marshall.

K. The place of the sale shall be: The Wabash County Courthouse, Mt. Carmel,

Illinois.

L. The time and date of the sale shall be: On the date set forth in the publication for sale as hereinafter required.

M. The Real Estate is ordered sold in accordance with statutory provisions.

N. The U.S. Marshall shall not commence procedures for the sale of the Real Estate unless and until the Plaintiff commences the statutory procedures required for such sale.

O. The Plaintiff, or such other party designated by the Court, in a foreclosure under this Article shall give public notice of the sale as follows:

(1) The notice of sale shall include the following information, but an immaterial error in the information shall not invalidate the legal effect of the notice:

(a) The name, address, and telephone number of the person to contact for information regarding the real estate;

(b) The common address and other common description (other than legal description), if any, of the Real Estate;

(c) A legal description of the real estate sufficient to identify it with reasonable certainty;

(d) A description of the improvements on the Real Estate;

(e) The time and place of the sale;

(f) The terms of the sale shall be cash, except as to the Plaintiff, who may offset its bid as provided at II, Paragraph D, above;

(g) The case title, case number and the Court in which the foreclosure was filed; and

(2) The notice of sale shall be published at least three consecutive calendar