# EXHIBIT C
# LIST OF ASSUMED LEASES

RIGHTWAY TRUCKING, INC.

KBK, LLC

MWT LEASING, LLC

# EXHIBIT D
# LIST OF ASSUMED LIABILITIES

ASSUMPTION OF FIFTH THIRD NOTE IN THE AMOUNT OF $2,500,000.00

ASSUMPTION OF ACCRUED PAYROLL AND ACCRUED VACATION COST DETERMINED IN AN AMOUNT EQUALTO THE ACTUAL AMOUNT OF SUCH LIABLITIES AT THE CLOSING DATE, NOT TO EXCEED $1,500,000.00.

# EXHIBIT E
# LIST OF USPS CONTRACTS

| | |
|---|---|
| 1 | 015SE |
| 2 | 030LJ |
| 3 | 030PJ |
| 4 | 030VJ |
| 5 | 08013 |
| 6 | 08529 |
| 7 | 10112 |
| 8 | 10216 |
| 9 | 137CE |
| 10 | 14024 |
| 11 | 14041 |
| 12 | 14070 |
| 13 | 14075 |
| 14 | 140CE |
| 15 | 140LO |
| 16 | 144CJ |
| 17 | 144EJ |
| 18 | 14737 |
| 19 | 14813 |
| 20 | 15021 |
| 21 | 15030 |
| 22 | 15037 |
| 23 | 15116 |
| 24 | 15117 |
| 25 | 17039 |
| 26 | 171LO |
| 27 | 189MR |
| 28 | 189MS |
| 29 | 207AE |
| 30 | 207BE |
| 31 | 207CK |
| 32 | 207FE |
| 33 | 207HE |
| 34 | 207JE |
| 35 | 207KE |
| 36 | 207L1 |
| 37 | 207ME |
| 38 | 207QE |
| 39 | 24011 |
| 40 | 32213 |
| 41 | 323CE |
| 42 | 350DE |
| 43 | 360EE |
| 44 | 38125 |
| 45 | 42334 |

| | |
|---|---|
| 46 | 42355 |
| 47 | 440MR |
| 48 | 440NS |
| 49 | 465L2 |
| 50 | 47611 |
| 51 | 47630 |
| 52 | 47631 |
| 53 | 47634 |
| 54 | 47890 |
| 55 | 48010 |
| 56 | 500LO |
| 57 | 50318 |
| 58 | 50323 |
| 59 | 50324 |
| 60 | 530MO |
| 61 | 54112 |
| 62 | 60213 |
| 63 | 60518 |
| 64 | 60537 |
| 65 | 60629 |
| 66 | 607L3 |
| 67 | 607L6 |
| 68 | 607MO |
| 69 | 62834 |
| 70 | 62835 |
| 71 | 628AO |
| 72 | 62935 |
| 73 | 62936 |
| 74 | 63290 |
| 75 | 663YO |
| 76 | 680NO |
| 77 | 730CE |
| 78 | 740AR |
| 79 | 740IR |
| 80 | 740LR |
| 81 | 740MS |
| 82 | 740PR |
| 83 | 740RR |
| 84 | 740SR |
| 85 | 740TR |
| 86 | 740WR |
| 87 | 760L8 |
| 88 | 98011 |
| 89 | 980L3 |
| 90 | 980AK |
| 91 | 980Y2 |
| 92 | 8805 |
| 93 | 170DS |
| 94 | 439MR |
| 95 | 740JR |

# EXHIBIT F

## Real Estate Lease and Rental Agreements

| | | |
|---|---|---|
| 1. | Angles, Valerie | Centralia, IL |
| 2. | Hooter Oil, Inc. | Mt. Carmel, IL |
| 3. | Indy Truck and Equipment | Indianapolis, IN |
| 4. | Odwalla, Inc. and Beaver Road Limited Partnership | Landover, MD |
| 5. | Sease 1995 Limited Partnership | Dunn, NC |
| 6. | Tanoos, Anthony | Terre Haute, IN |
| 7. | Werth & Sons Industrial Park | Denver, CO |
| 8. | Wells, Henry | Stillwater, OK |
| 9. | Venago Leasing | Barkeyville, PA |
| 10. | David Freedman, Inc. | Detroit, MI |

Parking Rental Agreements

| | | |
|---|---|---|
| 1. | Battisti, David | Allentown, NJ |
| 2. | Bay Engine and Transmission | Federal Way (Seattle), WA |
| 3. | Bowers, Jack | St. Louis, MO |
| 4. | Finkle, Clifford | Ocean, NJ |
| 5. | Days Inn | Junction City, KS |
| 6. | Emeryville Trucking | Warrendale, PA |
| 7. | Executive Motel | Radford, VA |
| 8. | Flynn's Truck Plaza | Shrewsbury, MA |
| 9. | Furniture Plus | Greencastle, IN |

| | | |
|---|---|---|
| 10. | Helms, Richard | Champaign, IL |
| 11. | JJ Sallinger | Harrisburg, PA |
| 12. | Ravi Gas | Jersey City, NJ |
| 13. | Regent, Ron | Buffalo, NY |
| 14. | Stony Ridge | Milbury, OH |
| 15. | Sutton Clark | Richmond, VA |
| 16. | Terminal Service | Edison, NJ |
| 17. | Troy Equity | Troy, MI |

*PERSONAL PROPERTY LEASES ARE DESCRIBED ON EXHIBIT C HEREIN*

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
LAWRENCE COUNTY, ILLINOIS

C. MICHAEL WITTERS AND DIANE WITTERS, )
INDIVIDUALLY AND DERIVATIVELY ON )
BEHALF OF MIDWEST TRANSIT, INC., )
)
Plaintiffs, )
)
vs. ) Case No. 00-L-2
)
)
HAL D. HICKS and )
MIDWEST TRANSIT, INC., )
)
Defendants. )
)
FIFTH THIRD BANK, INDIANA, )
)
Intervener. )

FILED
FEB 18 2003
CIRCUIT CLERK, LAWRENCE CO., ILL.

**ORDER**

This cause has been heard on the *Motion to Reconsider the Court's January 14, 2003 Order*, filed by defendant Hicks. The Court having heard the arguments of counsel, and being fully advised, IT IS HEREBY ORDERED AS FOLLOWS:

That said motion is denied without prejudice.

Dated: *nunc pro tunc* February 14, 2003

ENTER:______________________________
James V. Hill, Associate Circuit Judge

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
LAWRENCE COUNTY, ILLINOIS

| | |
|---|---|
| *C. MICHAEL WITTERS and DIANE WITTERS, INDIVIDUALLY and DERIVATIVELY ON BEHALF OF MIDWEST TRANSIT, INC.,* Plaintiffs-Appellees, v. *HAL D. HICKS,* Defendant-Appellant, *and MIDWEST TRANSIT, INC.,* Defendant-Appellee, and *FIFTH THIRD BANK –* Intervener-Appellee. | Appeal to the Illinois Appellate Court, Fifth District<br><br>From the Circuit Court of the Second Judicial Circuit<br>Cause No. 2000-L-2<br><br>FILED<br>MAR 5 2003<br>[signature]<br>CIRCUIT CLERK, LAWRENCE CO., ILL. |

NOTICE OF APPEAL

COMES NOW, Hal D. Hicks ("Mr. Hicks"), by and through his attorneys, Sandberg, Phoenix & von Gontard P.C., appealing to the Appellate Court of Illinois, Fifth District, from: (1) the January 14, 2003 Circuit Court order granting the Receiver's Motion for Authority to Enter Into Contract for Sale; and (2) the February 14, 2003, Circuit Court order denying Mr. Hicks' Motion to Reconsider the Court's January 14, 2003 Order;.

By this Appeal the Appellant seeks the following relief from the Appellate Court of Illinois for the Fifth District: Reversal of the Circuit Court's: (1) January 14, 2003 order granting the Receiver's Motion for Authority to Enter Into Contract for Sale; and (2) February

14, 2003, Circuit Court order denying Mr. Hicks' Motion to Reconsider the Court's January 14, 2003 Order, which in turn will prevent the Receiver from selling Midwest Transit, Inc.'s assets for a low price (when there is a competing offer to purchase the same assets for an additional $1.3 million dollars) and to avoid insider dealing with individual's appointed by the Receiver to operate, manage and supervise Midwest Transit, Inc..

SANDBERG, PHOENIX & von GONTARD, P.C.

By: ______________________
Lyndon P. Sommer, #06210128
Russell Makepeace, #06274049
John E. Theil, #06278587
One City Centre, 15th Floor
St. Louis, MO 63101-1880
314-231-3332
314-241-7604 (Fax)

Attorneys for Defendant
Hal D. Hicks

Certificate of Service

The undersigned certifies that a copy of the foregoing was sent via facsimile and U.S. mail, postage pre-paid, this 5th day of March, 2003, to following counsel of record:

Mr. Timothy L. Bertschy
Heyl, Royster, Voelker & Allen
124 S.W. Adams Street Suite 600
Peoria, IL 61602
Facsimile: 309/676-3374

Law Office of Terry Sharp
Terry Sharp
P.O. Box 906
Mt. Vernon, Illinois 62864
Facsimile: 618/242-1170

Andrew C. Ozete
Bamberger, Foreman, Oswald & Hahn, LLP
7th Floor, Hulman Building
20 N.W. 4th Street
P.O. Box 657
Evansville, Indiana 47704
Facsimile: 812/421-4936

LAW OFFICE OF TERRY SHARP, P.C.
ATTORNEYS AT LAW

TERRY SHARP*
ERIC DEAN TROUTT

1115 HARRISON STREET ○ P.O. BOX 906 ○ MT. VERNON, IL 62864
TELEPHONE (618) 242-0246 ○ FAX (618) 242-1170
WRITER'S E-MAIL: LAW@LOTSHARP.COM

*CERTIFIED PUBLIC ACCOUNTANT
CERTIFIED FRAUD EXAMINER

March 10, 2003

Mr. J. Dwight Young
Manager
National Mail Transportation Purchasing
475 L'Enfant Plaza SW, Room 4900
Washington, DC 20260-6210

**Re: Authority of the Receiver of Midwest Transit, Inc.**

Dear Dwight:

Quite some time ago, Don Hoagland, as interim receiver of Midwest Transit, was given authority to sell the assets of Midwest Transit. Stated or implied in this authority was the requirement that contracts be novated with the Post Office. The Order appointing Don as interim receiver was appealed to the Fifth District Appellate Court. A copy of the Fifth District Appellate Court's Rule 23 Order has been previously been provided to your counsel, but suffice it to say that clearly and without any reservation the Fifth District Appellate Court found that Hal D. Hicks had not been a nice person in his management of the affairs of the company and for the Circuit Court of Lawrence County to have not appointed a receiver would have been an abuse of discretion.

Thereafter, Don Hoagland was appointed liquidating receiver of Midwest Transit and has been serving as liquidating receiver since March 25, 2002. Actual and implied authority exists under the laws of the State of Illinois for a liquidating receiver to sell the assets of the company.

On December 27, 2002, Don Hoagland, as liquidating receiver, petitioned the Court for authority to enter into a letter of intent and further into a definitive agreement as contemplated by that letter of intent to sell the assets of the company to an employee group. An Order thereon approving the proposed sale was signed by Judge Hill on January 14, 2003. This is a final and appealable Order. On February 18, 2003, the Court ruled upon the Motion to Reconsider the January 14th Order filed by Hal D. Hicks. This Motion was denied without prejudice. Also, on February 18, 2003, the trial court heard argument on Hal D. Hicks' Motion to Stay Enforcement of the January 14th Order until completion of that appeal and found that the Court was without authority to rule on that Motion as no appeal had then been filed. Thereafter, on the 5th day of March, Hal D. Hicks did appeal the January 14th Order granting the receiver's motion for authority to enter into a contract for sale and the February 14th Order denying Hal D. Hicks' Motion to Reconsider the Court's January 14, 2003, Order.

On or about January 31, 2003, Hal D. Hicks filed with the Circuit Court of Lawrence County a Motion to Stay Enforcement of the January 14th Order which the Court denied. Now Hal D. Hicks has filed a Motion to Stay Enforcement of the Trial Court's January 14th Order with the Appellate Court.

The law in Illinois is clear. The losing party to litigation may file an appeal of that order, but if the order is not stayed, it is of full force and effect and any party that changes position based upon that order does so with the protection of Illinois Supreme Court Rule 305(b).

Illinois Supreme Court Rule 305(f) provides for condition of the bond. More specifically, however, Rule 305(j) is applicable to the affairs of Midwest Transit and is set out in total below.

> (j) Failure to Obtain Stay; Effect on Interests in Property.
> If a stay is not perfected within the time for filing the notice of appeal, or within any extension of time granted under subparagraph (c) of this rule, the reversal or modification of the judgment does not affect the right, title, or interest of any person who is not a party to the action in or to any real or personal property that is acquired after the judgment becomes final and before the judgment is stayed; nor shall the reversal or modification affect any right of any person who is not a party to the action under or by virtue of any certificate of sale issued pursuant to a sale based on the judgment and before the judgment is stayed. This paragraph applies even if the appellant is a minor or a person under legal disability or under duress at the time the judgment becomes final.

The Illinois Supreme Court has interpreted the effect of these rules in a case known as Steinbrecher v. Steinbrecher, 197 Ill.2d 514, 759 N.E.2d 509, 259 Ill.Dec. 729 (2001), a copy of which is enclosed for your convenience along with the majority of the Orders cited above.

It is my opinion as an Illinois lawyer that the effect of all of this is as follows: If the trial or appellate court does not stay the existing orders providing for the sale of Midwest Transit to the employee group, completion of this sale, while an unstayed appeal is pending, will render any such appeal moot. The net effect of this is as follows: Unless a stay is obtained by Hal D. Hicks, the contemplated transaction will in the normal course of business be closed long before the appellate court renders a decision (normally 6 to 20 months from the date the notice of appeal is filed).

The receiver's brief in opposition to the motion to stay is due in the Appellate Court on March 10, 2003. It is expected that the Appellate Court will rule promptly. The Appellate Court very seldom grants a stay and there is no immediate right of further appeal of the Appellate Court's decision granting or denying a stay as Supreme Court Rule 318(b) provides that interlocutory review "is not favored."

Yours truly,

LAW OFFICE OF TERRY SHARP, P.C.

By ______________________
Terry Sharp

TS/sc

NO. 5-03-0138

COPY

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| C. MICHAEL WITTERS, et al.,<br>Plaintiffs-Appellees,<br>v.<br>HAL D. HICKS,<br>Defendant-Appellant,<br>and<br>FIFTH THIRD BANK,<br>Intervenor-Appellee. | ) | Appeal from the Circuit Court of Lawrence County.<br><br>No. 00-L-2 |

FILED
MAR 18 2003
LOUIS E. COSTA
CLERK, APPELLATE COURT, 5th DIST.

ORDER

This cause has been considered on motion of defendant-appellant, Hal D. Hicks, to stay enforcement of the trial court's January 14, 2003, order allowing the receiver to enter into a letter of intent to sell the assets of plaintiff-appellee, Midwest Transit, Inc; and on response of Midwest Transit and plaintiffs-appellees, C. Michael Witters and Diane Witters; and the court being advised in the premises;

IT IS THEREFORE ORDERED that the motion for stay shall be, and the same hereby is, DENIED.

UNITED STATES POSTAL SERVICE

# NOTICE OF RENEWAL OF TRANSPORTATION SERVICES CONTRACT FOR REGULAR SERVICE

JUL 1 2003

## 1. RENEWAL PURSUANT TO

| a. CONTRACT NO. | b. EXPIRATION DATE OF EXPIRING CONTRACT | c. BEGIN CONTRACT TERM | d. END CONTRACT TERM |
|---|---|---|---|
| ...024 | 06/30/2003 | 07/01/2003 | 06/30/2007 |

| e. FOR MAIL SERVICE IN OR BETWEEN | CITY & STATE | CITY & STATE |
|---|---|---|
| | BUFFALO P & DC, NY | PITTSBURGH BMC, PA |

## 2. RATE OF COMPENSATION

| a. CONTRACT RATE | b. ANNUAL MILEAGE | c. RATE PER MILE |
|---|---|---|
| $1,886,540.64 PER ANNUM | 1,642,339.0 | $1.14869 |

## 3. SUPPLIER

| a. NAME | b. ADDRESS (Street, City, State, ZIP+4) |
|---|---|
| HAL D HICKS MAIL TRANSPORTATION | P.O. BOX 98<br>SUMNER IL 62466-0098 |

## 4. CONTRACT

Having executed PS Form 7447, *Transportation Services Renewal Contract for Regular Service*, the contract referenced above is renewed for the additional term specified at the rate and under the terms and conditions for service prevailing at the end of the contract term, subject to any change that may be made in the operation under your current contract.

The law prohibits you from assigning or transferring this contract without the authorization of the U.S. Postal Service, and provides for the cancellation of the contract if you assign or transfer it without first receiving authorization. Further, you will be liable for any damages resulting from such an assignment or transfer without authorization. If you wish to assign or transfer your contract, contact your Contracting Officer for information on subcontracting requirements.

The presence of a postal inspector in your transportation equipment or in the vicinity of your facilities or the route over which your equipment is operated shall not be revealed by you or your employees to any person at any time.

A copy of your contract, which includes this form properly executed by this office on behalf of the U.S. Postal Service, the renewal solicitation and attachments, and your proposal are enclosed. You are cautioned to preserve these documents carefully for future reference.

A copy of this communication has been sent to all concerned as authority for the above-referenced contract.

THIS IS A TRUE COPY OF THE ORDER/CONTRACT BEARING THIS CERTIFICATION.

SIGNED: Allen J. Machia
CTS
NAME/TITLE

| | |
|---|---|
| SIGNATURE OF CONTRACTING OFFICER<br>[signature]<br>TITLE OF CONTRACTING OFFICER<br>TRANSP CONTRACTING OFFICER<br>ADDRESS OF CONTRACTING OFFICER<br>NORTHEAST DNO<br>...FIN RD N<br>...SOR CT 06006-7070 | 8. DISTRIBUTION<br>1 - Contracting Officer<br>2 - Accounting Service Center<br>3 - Administrative Official - BUFFALO, NY<br>4 - Supplier<br>5 - ~~P&DC/F~~<br>6 - ~~Customer Service District~~<br>7 - En Route Offices |

| DATE ORDERED | b. ORDER NO | c. ROUTE ORDER NO | d. BUDGET ACCOUNT NO. | e. FINANCE NO |
|---|---|---|---|---|
| 7/1/03 | 060-04956-03 | 1 | 53131 | 08-9904 |

PS 7445

UNITED STATES POSTAL SERVICE

# TRANSPORTATION SERVICES RENEWAL CONTRACT FOR REGULAR SERVICE

## 1. RENEWAL PURSUANT TO

| TRACT NO. | b. EXPIRATION DATE OF EXPIRING CONTRACT | c. BEGIN CONTRACT TERM | d. END CONTRACT TERM |
|---|---|---|---|
| 4 | 06/30/2003 | 07/01/2003 | 06/30/2007 |

| FOR MAIL SERVICE IN OR BETWEEN | CITY & STATE | CITY & STATE |
|---|---|---|
| | BUFFALO P & DC, NY | PITTSBURGH BMC, PA |

## 2. RATE OF COMPENSATION

| CONTRACT RATE (Specify If Other Than Annual) | b. ANNUAL MILEAGE | c. RATE PER MILE |
|---|---|---|
| $1,886,540.64 PER ANNUM | 1,642,339.0 | $1.14869 |

## 3. SUPPLIER

| NAME (Print or Type) | b. ADDRESS (Street, City, State, ZIP+4) |
|---|---|
| HAL D HICKS MAIL TRANSPORTATION | P.O. BOX 98<br>SUMNER IL 62466-0098 |

| TELEPHONE NO. | d. DOT NO. | e. SOCIAL SECURITY NO. OR EMPLOYER IDENTIFICATION NO. |
|---|---|---|
| 618-936-2305 | | 37-0979267 |

| f. LEGAL RESIDENT OF (Complete If Supplier Is an Individual) | | g. ENGAGED IN BUSINESS IN (Complete If Supplier Is a Partnership or Corporation) | |
|---|---|---|---|
| OUNTY | STATE | COUNTY | STATE |
| | | | |

## 4. CONTRACT

Vage Determination No. 1987-0310 Rev - 26 03/11/2003 or collective bargaining agreement dated

rm, your proposal, the Statement of Work and all attachments are incorporated into the renewal contract. By executing the renewal contract, the er agrees to perform the Statement of Work and accepts the clauses and provisions of this renewal contract.

The above referenced contract, for the period specified, is hereby renewed with the rate(s) and service(s) prevailing at the end of the current contract.

| 5. SUPPLIER | 6. U.S. POSTAL SERVICE |
|---|---|
| Janie Ensminger 06/17/03<br>(Signature of Supplier) (Date) | [signature] 7/19/03<br>(Signature of Contracting Officer) (Date) |
| JANIE ENSMINGER, Supplier<br>(Name and Title of Supplier) | TRANSP CONTRACTING OFFICER<br>(Title of Contracting Officer) |

OMMENTS (For U.S. Postal Service Use Only)

THIS IS A TRUE COPY OF THE ORDER/CONTRACT BEARING THIS CERTIFICATION.

SIGNED: Allen J. Machia

CTS

NAME/TITLE



m 7447
ber 2001

# FIRST AMENDMENT TO DEFINITIVE ASSET PURCHASE AGREEMENT

This First Amendment to Definitive Asset Purchase Agreement (the "First Amendment") is made and entered into September 7, 2003, by and among Midwest Transport, Inc., a Delaware corporation ("Buyer"), and Midwest Transit, Inc., an Illinois corporation in receivership ("Seller").

## RECITALS

WHEREAS, on March 25, 2002, the Court approved a Liquidating Receiver, pursuant to 805 ILCS 5/12.56(b) [part of the Illinois Corporations Act of 1983 (the "Act")] and 5/12.56(b)(12) of the Act, because the Court found under the circumstances, that the "disso lution" of the corporation was the only alternative. This was also upheld on appeal at Witter v. Hicks II, 2003 WL 1878210; and

WHEREAS, under the March 25, 2002 Order, the Court granted the Liquidating Receiver the authority to dissolve the corporation, as well as the power to, pursuant to terms outlined in the Act: " Sell, convey and dispose of all or any part of the assets of Midwest Transit, Inc...and to take any action as may be necessary to wind up and liquidate the corporation' s business and affairs."; and

WHEREAS, on January 14, 2003, the Court granted an Order approving a Letter of Intent which was executed by Buyer, Midwest Transportation Services, Inc., and Seller on that same date and which further authorized Seller to enter into a Definitive Asset Purchase Agreement as contemplated in the Letter of Intent; and

WHEREAS, on February 7, 2003, Buyer and Seller entered into a certain Definitive Asset Purchase Agreement which was contemplated in the Letter of Intent wherein Buyer agreed to purchase from Seller the Assets and Seller agreed to sell to Buyer the Assets all upon the terms and conditions contained in the Definitive Asset Purchase Agreement; and

WHEREAS, pursuant to a certain Definitive Asset Purchase Agreement Closing Date Extension dated March 21, 2003, Buyer and Seller agreed to extend the Closing Date with respect to the transaction contemplated in the Definitive Asset Purchase Agreement to April 18, 2003; and

WHEREAS, Seller was not able, on or before April 18, 2003, to comply with the condition contained in Section 3.1(a) of the Definitive Asset Purchase Agreement which requires Seller to cause the USPS Contracts to be transferred to Buyer through valid and binding novations with the United States Postal Service; and

WHEREAS, on April 16, 2003, legal counsel to SLM Trans, Inc., a Maryland corporation ("SLM"), issued a letter to the United States Postal Service ("USPS") which

{4644\000\158460.DOC.4}

sought to dissuade the USPS from novating the USPS Contracts into Buyer' s name as contemplated in the Definitive Asset Purchase Agreement; and

WHEREAS, SLM is owned by Shelly Lynn Myles, the daughter of Hal D. Hicks, and it is believed that such letter caused Hal D. Hicks to indirectly violate the terms of the March 25, 2003 Order described above and further caused the USPS to fail to approve the sale transaction contemplated in the Definitive Asset Purchase Agreement which certain personnel of the USPS had previously verbally indicated would be approved prior to or concurrently with the April 18, 2003 Closing Date; and

WHEREAS, by letter dated May 15, 2003 (the "First United States Postal Service Letter"), the United States Postal Service advised Buyer that the primary reason for the denial of the request to consent to a novation of the USPS Contracts was that the transfer of assets needs to have already taken place when a novation request is made; and

WHEREAS, in order to comply with the First United States Postal Service Letter, Midwest Transportation Services, Inc. hereby agrees to be removed as a party to the Definitive Asset Purchase Agreement; and

WHEREAS, on August 19, 2003, Buyer obtained a conditional approval letter of the United States Postal Service (the "Second United States Postal Service Letter") with respect to the novation into Buyer's name of the USPS Contracts; and

WHEREAS, in order to comply with the First United States Postal Service Letter and the Second United States Postal Service Letter, Buyer and Seller are desirous of consummating the transaction contemplated in the Letter of Intent and embodied in the Definitive Asset Purchase Agreement in accordance with the terms and conditions of this First Amendment.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants, representations, warranties, conditions and agreements hereinafter expressed, the Parties agree as follows:

1. Definitions. Any initially capitalized term or phrase which is not defined herein shall the meaning(s) ascribed to that term or phrase in the Definitive Asset Purchase Agreement. In addition, the following initially capitalized terms and phrases shall have the following meanings:

"*Buyer*" shall mean Midwest Transport, Inc., a Delaware corporation (and not Midwest Transportation Services, Inc., a Delaware corporation, as defined in the Definitive Asset Purchase Agreement and as referred to in the First Amendment).

"*Definitive Asset Purchase Agreement*" shall mean that certain Definitive Asset Purchase Agreement executed by Buyer and Seller on February 7, 2003, as amended by this First Amendment and as further amended and/or restated.

"*Lawsuit*" shall mean Hal D. Hicks v. Midwest Transportation Services, Inc., Midwest Transport, Inc., Kenneth Hohlbaugh and Charles E. Smith filed in the United States District Court for the Southern District of Illinois.

"*Operational Liabilities*" shall mean any remaining liability, after all insurance recovery and payments to Seller with respect thereto, of Seller arising under a claim which arises in tort, contract or otherwise, the underlying basis for which occurred on or after April 19, 2003. The definition of "Operational Liabilities" shall only include liabilities related to the operation of trucking business of Seller and with respect to the performance of the USPS Contracts and shall not include any claim, liability or other matter relating to the receivership of Seller or any lawsuit or claim of Seller brought directly or indirectly by Hal D. Hicks or C. Michael Witters or Diane Witters. The phrase "the underlying basis for which occurred on or after April 19, 2003" means that the act or omission which gave rise to or created the liability occurred on or after April 19, 2003. (As an example only, if a tax lien arises on or after April 19, 2003, but the unpaid taxes which gave rise to the lien were first due and payable prior to April 19, 2003, such tax lien shall not be considered part of the "Operational Liabilities".)

"*Nonrecourse Loan Participation Agreement*" shall mean that certain Nonrecourse Loan Participation Agreement dated May 23, 2003 by and between Buyer and Fifth Third Bank, Indiana.

"*Note*" shall mean that certain Promissory Note of even date herewith made by Buyer for the benefit of Seller in the original principal amount described in this First Amendment.

"*United States Postal Service Letter*" shall mean a certain letter dated May 15, 2003, from the Untied States Postal Service to Buyer.

2. Closing Date. The Closing Date shall be the date of this First Amendment, but it shall be effective as of April 18, 2003. Subject to the provisions of a certain Security Agreement executed by Buyer and Seller of even date herewith, Buyer and Seller shall each make all deliveries required at Closing which are described in the Definitive Asset Purchase Agreement. Buyer does hereby waive all contingencies and conditions precedent to the Closing which are contained in the Definitive Asset Purchase Agreement, provided that Seller does hereby represent to Buyer that upon any novation of the USPS contracts into the name of Buyer, all USPS Contracts shall be novated into the name of Buyer.

3. Determination of cash payment under the Definitive Asset Purchase Agreement. The Parties agree that the sale contemplated under the Definitive Asset Purchase Agreement shall, for all purposes, be considered to have occurred on April 18, 2003, and that the following sums of cash are due to Seller from Buyer:

| AMOUNT | DESCRIPTION |
| --- | --- |
| $1,011,825 | Cash Purchase Price (as described in the Definitive Asset Purchase Agreement, subject to adjustments due to computations described on Exhibit A |

The total amount of cash due to Seller from Buyer described in this Section 3 of One Million Eleven Thousand Eight Hundred Twenty Five Dollars ($1,011,825) shall, instead of being paid to Seller at Closing as provided under the Definitive Asset Purchase Agreement, be paid to Seller in accordance with the terms and conditions of the Note. The Seller shall also receive a payment of Two Hundred Six Thousand Seven Hundred Seventy Dollars ($206,770) which represents Seller's net working capital position as of April 18, 2003. If any of the amounts described on Exhibit A or in this paragraph are determined to be in error by Harding Shymanski & Co., on or before October 7, 2003, then the computations described on Exhibit A shall be appropriately adjusted and the amount of the Note as described above shall be appropriately adjusted.

4. Assumption of Fifth Third Note. The Parties agree that the assumption of the Fifth Third Note described in Section 2.3(a) of the Definitive Asset Purchase Agreement has occurred pursuant to the terms and conditions of the Nonrecourse Loan Participation Agreement.

5. Closing of Effingham Property. The closing of the Effingham Property, as described in paragraph number 2 of the definition of "Assets" contained in the Definitive Asset Purchase Agreement, shall be upon the terms and conditions contained in the Definitive Asset Purchase Agreement, and Buyer shall receive title to the Effingham Property, free and clear of all liens and encumbrances, except that the closing date shall be fifteen (15) days after the novation of USPS Contracts in the name of Buyer on or before December 20, 2003.

6. Amendment of Section 3.2 of the Definitive Asset Purchase Agreement. Section 3.2 of the Definitive Asset Purchase Agreement is hereby removed and replaced with the following:

3.2 **Payments Under Noncompete Agreements.** If Michael and Diane Witters, on the one hand, or Hal. D. Hicks, on the other hand, do not execute their respective Noncompete Agreements on or before fifteen (15) days after the novation of the USPS Contracts, then the amount which would be paid to them under Section 1(b) of their respective Noncompete Agreements (which equals $1,075,000.00 plus interest) will be paid to the Company pursuant to the Escrow Agreement. The Noncompete Agreements will be conditioned upon the novation of the USPS Contracts in the name of Buyer on or before December 20, 2003, and all payments under this section relating to the Escrow Agreement or the Noncompete Agreements will not commence to be due until such novations occur.

7. Revision of Section 8.1. Section 8.1 of the Definitive Asset Purchase Agreement is hereby deleted and the following is substituted therefor:

**Indemnification of Buyer by Seller.** Seller shall indemnify and hold harmless the Indemnified Parties, jointly and severally, and Seller hereby waives any claim for contribution or indemnity against the Indemnified Parties, or any of them, from any and all lawsuits, claims, losses, or damages arising out of or in connection with: (i) their employment by Seller; and (ii) Seller's receivership; and (iii) the operation and management of Seller; and (iv) the Lawsuit. The indemnification in the preceding sentence, however, shall not include any matter, the basis for which occurs after April 18, 2003.

8. Removal of Midwest Transportation Services, Inc. The Parties do hereby agree that Midwest Transportation Services, Inc. is removed as a party to the Definitive Asset Purchase Agreement and that all references in the Definitive Asset Purchase Agreement to Midwest Transportation Services, Inc. shall be to Buyer. Notwithstanding the foregoing sentence, however, Midwest Transportation Services, Inc. shall still be considered to be one of the "Indemnified Parties" under the Definitive Asset Purchase Agreement.

9. Assumption of Operational Liabilities. Buyer does hereby assume all Operational Liabilities of Seller the basis for which occurs on or after April 19, 2003.

10. Return of Trailers Owned by Hal Hicks. Buyer agrees to return all trailers owned by Hal Hicks at the Seller's prior Sumner facility on or before October 26, 2003.

11. Further Assurances. Buyer and Seller shall do such acts and execute such documents and instruments as may be reasonably required to make effective the transactions contemplated hereby. In addition, in the event the United States Postal Service shall fail to novate into Buyer's name all of the USPS contracts,

or condition such novation in a manner which materially negatively affects or impacts Buyer, then Buyer by giving written notice to Seller, may elect to adjust the amount of the Note, and Buyer and Seller shall equitably adjust the amount of the Note.

12. Republication of the Definitive Asset Purchase Agreement. Except as explicitly amended herein, the Parties to this First Amendment do hereby republish and reaffirm the Definitive Asset Purchase Agreement.

**IN WITNESS WHEREOF**, the Parties hereto have executed this First Amendment on the date and year first above written.

**[BALANCE OF PAGE INTENTIONALLY LEFT BLANK]**

**COUNTERPART SIGNATURE PAGE TO**
**FIRST AMENDMENT TO DEFINITIVE ASSET PURCHASE AGREEMENT**
**DATED AS OF THE 7TH DAY OF SEPTEMBER, 2003**

"Seller"

Midwest Transit, Inc., an Illinois corporation in receivership

By: [signature] Receiver

# COUNTERPART SIGNATURE PAGE TO FIRST AMENDMENT TO DEFINITIVE ASSET PURCHASE AGREEMENT DATED AS OF THE 7TH DAY OF SEPTEMBER, 2003

"Buyer"

Midwest Transport, Inc., a Delaware corporation

By: [signature]

**COUNTERPART SIGNATURE PAGE TO**
**FIRST AMENDMENT TO DEFINITIVE ASSET PURCHASE AGREEMENT**
**DATED AS OF THE 7TH DAY OF SEPTEMBER, 2003**

The undersigned does hereby consent to the provisions of Section 8 of this First Amendment.

Midwest Transportation Services, Inc., a Delaware corporation

By: Kenneth Hohlbaugh
Printed Name: Kenneth Hohlbaugh
Its: President
Date: 9/07/03

# EXHIBIT A
# MIDWEST TRANSIT, INC.
# NET WORKING CAPITAL POSITION
# AS OF APRIL 18, 2003

| | | |
|---|---|---|
| CASH | | |
| USPS REC'D ON 4/18/2003 | $ | 3,408,473 |
| USPS RECEIVABLE | $ | 500,422 |
| CASH IN BANK | $ | - |
| FREIGHT RECEIVABLE | $ | 368,263 |
| PILOT REBATE ($19,419.81) PRO-RATED 18 DAYS | $ | 11,646 |
| TOTAL CASH | $ | 4,288,804 |
| CASH TO BE PAID OUT | | |
| PAYROLL 4/18/2003 INCL TAXES | $ | 941,355 |
| UNION PLANTERS BANK - LINE OF CREDIT | $ | 717,000 |
| CHECK RUN ON 04/16/2003 | $ | 923,020 |
| ACCOUNTS PAYABLE AFTER CHECK RUN | $ | 582,909 |
| UNION PLANTERS BANK - NOTE | $ | 150,000 |
| TOTAL PAID OUTS | $ | 3,314,284 |
| SURPLUS SURPLUS | $ | 974,520 |
| RECEIVERSHIP EXPENSES PAID AFTER 04/18/2003 | $ | 767,750 |
| CASH OWED TO MIDWEST TRANSIT, INC. | $ | 206,770 |

# EXHIBIT A
# MIDWEST TRANSIT, INC.
# NET WORKING CAPITAL POSITION
# AS OF APRIL 18, 2003

| | | |
|---|---|---|
| **CASH** | | |
| USPS REC'D ON 4/18/2003 | $ | 3,408,473 |
| USPS RECEIVABLE | $ | 500,422 |
| CASH IN BANK | $ | - |
| FREIGHT RECEIVABLE | $ | 368,263 |
| PILOT REBATE ($19,419.81) PRO-RATED 18 DAYS | $ | 11,646 |
| TOTAL CASH | $ | 4,288,804 |
| **CASH TO BE PAID OUT** | | |
| PAYROLL 4/18/2003 INCL TAXES | $ | 941,355 |
| UNION PLANTERS BANK - LINE OF CREDIT | $ | 717,000 |
| CHECK RUN ON 04/16/2003 | $ | 923,020 |
| ACCOUNTS PAYABLE AFTER CHECK RUN | $ | 582,909 |
| UNION PLANTERS BANK - NOTE | $ | 150,000 |
| TOTAL PAID OUTS | $ | 3,314,284 |
| SURPLUS SURPLUS | $ | 974,520 |
| RECEIVERSHIP EXPENSES PAID AFTER 04/18/2003 | $ | 767,750 |
| CASH OWED TO MIDWEST TRANSIT, INC. | $ | 206,770 |