**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **HAL D. HICKS, f/d/b/a HAL D. HICKS MAIL TRANSPORTATION,** | ) | **Fed. Cl. No. 05-1058C** |
| **Plaintiff** | ) | **(Judge Allegra)** |
| **v.** | ) | |
| **UNITED STATES,** | ) | |
| **Defendant** | ) | |
| **v.** | ) | |
| **MIDWEST TRANSPORT, INC.** | ) | |
| **Defendant-Intervenor.** | ) | |

**MIDWEST TRANSPORT INC.'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS**

Pursuant to RCFC 56(h)(1), Defendant-Intervenor Midwest Transport, Inc. respectfully submits the following Proposed Findings of Uncontroverted Fact in Support of its Motion for Summary Judgment.

1. Midwest Transport, Inc. is a Delaware corporation established in 2002. The management of Midwest Transport includes some former employees of Midwest Transit. Midwest Transport is a legal entity separate, distinct and unrelated to Midwest Transit. In December 2002, Midwest Transport purchased all of the assets of Midwest Transit used to perform Midwest Transit's Postal Service contracts. The assets included United States Postal

Service ("Postal Service") Highway Mail Contract 14024 (the "Buffalo Route" or "Contract 14024"). App. at 000127, 0140.[1]

2. The Buffalo Route was novated to Midwest Transport, Inc. pursuant to a novation agreement between Midwest Transit, Inc., Midwest Transport, Inc., and the Postal Service effective December 4, 2003. App. 0127–30.

3. Before the novation, the Buffalo route was held in the name of Hal D. Hicks Mail Transportation. App. 0139. Although Contract 14024 was held in the name of Hal D. Hicks Mail Transportation, the contract was—at all times before the novation—operated by Midwest Transit, Inc. Witters v. Hicks, 780 N.E.2d 713, 720 (Ill. App. Ct. 5th 2002); see also App. 0006–07.

**BACKGROUND ON THE DISSOLUTION OF MIDWEST TRANSIT, INC.**

4. Midwest Transit, Inc. was a Postal Service contractor. Mr. Hicks was a 50% owner of Midwest Transit, Inc.; C. Michael and Diane Witters owned the other 50% of the business. App. 0139.

5. In 2000, after disputes between the owners, the Witters filed suit on their own behalf, and derivatively on behalf of Midwest Transit, against Hicks and Midwest Transit, Inc. in the Circuit Court of the Second Judicial Circuit in Lawrence County, Illinois, Law No. 2000-L-2. See App. 0139. In that action, the Witters alleged that Mr. Hicks had engaged in fraudulent activities and that he had misapplied and wasted Midwest Transit assets. Id. They requested that, pursuant to the Illinois Business Corporation Act of 1983 (805 Ill. Comp. Stat. 5/12.56), that that the Court determine the rights of the parties as it related to Midwest Transit. See

[1] The materials supporting Midwest Transport's Motion for Summary Judgment and Proposed Findings of Uncontroverted Fact have been compiled in the appendix attached to its Motion for Summary Judgment and Memorandum in Support Thereof. This Appendix will be cited as "App."

Witters, 780 N.E.2d at 715–16. The Witters requested the appointment of a receiver or custodian pursuant to 805 Ill. Comp. Stat. 5/12.56 and 805 Ill. Comp. Stat. 5/12.60. Id. at 716; see also 805 Ill. Comp. Stat. 5/12.56 and 805 Ill. Comp. Stat. 5/12.60 (2001).

6. The Illinois Circuit Court heard testimony and accepted evidence during a multi-day hearing. App. 0001. On July 24, 2001, the Illinois Circuit Court issued its findings and ruling. App. 0005–09. The Circuit Court found that illegal, oppressive, or fraudulent behavior under 805 Ill. Comp. Stat. 12.56(a)(3) existed with respect to the actions of Mr. Hicks as it pertained to his dealings with Midwest Transit. App. 0002, 0006–07. Of note, the Circuit Court found that Mr. Hicks had engaged in "[o]ppressive activity" because "Hicks treats the Buffalo Route as his own business and does not deposit the revenues received from said route into Midwest's accounts." App. 0002, 0006. Based on those findings, the Court decided that the appointment of a receiver for the corporation was necessary. App. 0008. The Court enjoined the parties from interfering with the receiver's control of Midwest Transit and from "diverting any funds away from the corporation and its accounts, including . . . all income generated by the Buffalo Route." App. 0003, 0008. The Court further ordered all parties to direct such funds to the receiver if they were received. App. 0003, 0009.

7. On July 25, 2001, in Witters v. Hicks, No. 2000-L-2, Judge James V. Hill in the Circuit Court of the Second Judicial Circuit of Lawrence County, Illinois appointed Mr. Don Hoagland as the interim receiver for Midwest Transit, Inc. under 805 Ill. Comp. Stat. 5/12.60(d). App. 0003, 0009. The interim receiver was granted "plenary powers to run the business of Midwest Transit, Inc. pending the resolution of the current litigation or under further order of court." App. 0003, 0008.

8. On August 24, 2001, the Circuit Court issued an Order clarifying its July 25, 2001 Order with regard to the scope of the Receiver's authority. App. 0010. The latter Order granted the Receiver authority to negotiate the sale of the company, subject to final approval of the Court. App. 0010.

9. On March 25, 2002, the Circuit Court of the Second Judicial Circuit of Lawrence County, Illinois ordered the dissolution of Midwest Transit, Inc. App. 0013. The Court appointed Don Hoagland as the liquidating receiver pursuant to 805 Ill. Comp. Stat. 5/12.56 and 5/12.60. App. 0013. The Court granted the liquidating receiver the power to "sell, convey and dispose of all or any part of the assets of Midwest Transit, Inc., either at public or private sale, and to take any other action as may be necessary to wind up and liquidate the corporation's business and affairs under 805 ILCS 5/12.30 and to notify known claimants under 805 ILCS 5/12.75." App. 0013–14.

10. In its Corporate Dissolution Order, the court made any sale of mail contracts subject to the approval of the court. App. 0014. The liquidating receiver was granted the authority to operate the mail contracts "for such time period as required to effectively sell or convey such contracts at maximum value to the company and shall not cease such operations without leave of court." App. 0014.

11. In September 2002, the Appellate Court of Illinois, Fifth District, issued an order in Witters v. Hicks confirming the trial court's appointment of a receiver and again finding that the Buffalo route contract was an asset of Midwest Transit. See generally Witters, 780 N.E.2d 713. The court held that Mr. Hicks had acted illegally by using Midwest Transit assets and employees to operate Hal D. Hicks Mail Transportation and, specifically, the Buffalo Route. Id. at 443. While the court noted that the Buffalo Route contract was in the name of Hal D. Hicks

Mail Transportation, it also recognized that Midwest Transit had operated the contract, paid for the fuel, provided the employees, and had collected the revenue for the contract. Id. Specifically, the court noted:

> The Buffalo route was a mail route operated by MWT. MWT pays for all fuel and other operating costs. MWT employees operate the route and handle all the paperwork for the route. MWT financial statements show a line item for revenue from the Buffalo route. Although maintained in Hicks' name, since its inception, revenue for the Buffalo route had been transferred to MWT. Since the beginning of the present suit, Hicks retained the revenue from the route, although it continues to be operated by MWT and at MWT's expense. Hicks acknowledges that several MWT trucks are used to operate the Buffalo route, but he argues that MWT uses 68 of his trucks but pays him nothing. Not only does this not justify Hicks' use of MWT assets and personnel to operate a route which is in his name and from which he keeps all revenue, but it also is exactly the type of commingling of personal and corporate assets that justifies the appointment of a receiver.

Id.

12. Following the appellate court's decision, on December 27, 2002, the Liquidating Receiver signed a term sheet ("Letter of Intent") with two companies (Midwest Transport, Inc. and Midwest Transportation Services, Inc.), which was owned by former employees of Midwest Transit, Inc., for the purpose of selling them the assets of Midwest Transit. See App. 0016, 00140. The Letter of Intent contemplated a Definitive Asset Purchase Agreement ("Purchase Agreement") to be entered between the Buyer and Seller. App. 0016. Further, it provided that Midwest Transit, Inc. would sell all assets "useful or necessary to operate a trucking company." App. 0016. Those assets included "[a]ll postal routes" which were listed in Exhibit A of the term sheet. App. 0016–17. That list included Contract 14024, the Buffalo Route. App. 0027.

13. On December 30, 2002, the Liquidating Receiver filed a Motion for Authority To Enter Into Contract For Sale with the Circuit Court. See generally App. 0029–55. The Motion included the Letter of Intent for the Court's review and requested approval for entry into the

Purchase Agreement contemplated by the Letter of Intent. App. 0029–30.

14. On January 14, 2003, the Circuit Court granted the Receiver's Motion for Authority to Enter Into Contract for Sale and thereby authorized the Liquidating Receiver to sign the Letter of Intent and enter into a definitive agreement. App. 0056.

15. Subsequently, Mr. Hicks filed a Motion to Reconsider the Court's January 14, 2003 Order, which was denied by the Circuit Court on February 18, 2003. App. 0102.

16. On February 7, 2003, the Liquidating Receiver entered into a Definitive Asset Purchase Agreement ("Purchase Agreement") on behalf of Midwest Transit, Inc. consistent with the Letter of Intent to sell certain assets to Midwest Transport, Inc. and Midwest Transportation Services, Inc. See generally App. 0057–0101. The assets sold under the Purchase Agreement included all 95 of the Midwest Transit Postal Service contracts which were identified in Exhibit E. App. 0058–59, 0098. That list included Contract 14024. App. 0098. Pursuant to the Purchase Agreement, the Seller also made several representations and warranties that it had the authority to use, own, and sell the Assets. App. 0065–66.

17. Exhibit E to the Purchase Agreement listed 95 Postal Service Contracts, including Postal Contract No. 14024. App. 0098.

18. On March 5, 2003, Mr. Hicks appealed the January 14, 2003 Order granting the Receiver's Motion for Authority to Enter Into Contract for Sale and the February 14, 2003 Order denying his Motion to Reconsider. App. 0103. Mr. Hicks' appeal was denied by the Appellate Court of Illinois, Fifth District, on March 18, 2003. App. 0109.

19. Counsel for the Receiver advised the Postal Service by letter dated March 10, 2003 that the Receiver had the authority to enter the sales agreement to sell assets as set forth in the letter of intent unless Hicks obtained a stay. App. 0106–07.

20. Mr. Hicks also contested the Circuit Court's authority to appoint Mr. Hoagland as the liquidating receiver. Witters v. Hicks, 790 N.E.2d 5, 10 (Ill. App. Ct. 2003). The Illinois Appellate Court upheld the authority of the Circuit Court to appoint Mr. Hoagland as the liquidating receiver on March 17, 2003. Id. at 12.

21. On June 19, 2003, while the Buffalo Route contract was under the control of the Receiver, the Postal Service renewed Contract 14024. App. 0111.

22. On September 7, 2003, the Liquidating Receiver entered an Amendment to the Purchase Agreement. App. 0112–24. Midwest Transportation Services, Inc., was removed as a party to the Purchase Agreement, leaving only Midwest Transport, Inc. as the buyer. App. 0113. All of the material provisions of the Purchase Agreement remained in effect. App. 0117.

23. By letter dated October 2, 2003, Counsel for the Receiver again advised the Postal Service that the Receiver had the authority to sell the assets of Midwest Transit. App. 0125–26. He advised Mr. Sykes of the Postal Service that Mr. Hicks had exhausted all chances to appeal the January 14, 2003 Order of the Circuit Court granting authority to sell the assets. App. 0125–26. Counsel also advised that the sale of the assets was final and properly closed under Illinois law. App. 0125–26.

## NOVATION AGREEMENT

24. The Postal Service, Midwest Transit, Inc. and Midwest Transport, Inc. entered a Novation Agreement effective December 4, 2003, which transferred all of Midwest Transit's contracts to Midwest Transport. App. 0127–30. The Liquidating Receiver, Don Hoagland, signed the Novation Agreement on behalf of Midwest Transit, Inc. App. 0129. The Novation Agreement referred to and attached the Definitive Asset Purchase Agreement and the Circuit Court's January 14, 2003 Order and thereby novated Contract 14024 to Midwest Transport. See

App. 0127-0130.

25. On January 14, 2004, the Postal Service issued Contract Route Service Order 200-008-04, announcing that it had approved the December 4, 2003 Novation Agreement transferring contracts held by Midwest Transit, Inc. to Midwest Transport, Inc. App. 0136. Contract 14024 was included in the list of contracts. App. 0136.

26. On February 24, 2004, the Postal Service issued Contract Route Service Order 200-009-04 under Contract 14024, announcing that it had approved the December 4, 2003 Novation Agreement novating the contract from Hal D. Hicks Mail Transportation to Midwest Transport, Inc., d/b/a Midwest Transport of Illinois. App. 0137.

**MR. HICKS IS INELIGIBLE FOR CONTRACT AWARDS**

27. Mr. Hicks is not a responsible contractor eligible for award of a Postal Service contract. Mr. Hicks was debarred in January 2006 from federal work and is listed on the Excluded Parties List System. App. 0144–46.

October 26, 2007

Respectfully Submitted,

s/David P. Hendel

David P. Hendel
Akerman Senterfitt Wickwire Gavin
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22182
Phone: (703) 790-8750
Fax: (703) 448-1801

*Of Counsel:*

J. Michael Littlejohn
AKERMAN SENTERFITT WICKWIRE GAVIN
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22182
Phone: (703)790-8750
Fax: (703)448-1801

John E. Hilton
CARMODY, MACDONALD, P.C.
120 S. Central Ave, Suite 1800
St. Louis, MO 63105
Phone: (314) 854-8600
Fax: (314)-854-8660