IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HAL D. HICKS, f/d/b/a HAL D. HICKS MAIL TRANSPORTATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant,<br><br>and<br><br>MIDWEST TRANSPORT,<br><br>Defendant-Intervenor. | ) | No. 05-1058C<br>(Judge Allegra) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO INTERVENOR'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, Hal D. Hicks (f/d/b/a Hal D. Hicks Mail Transportation), by and through his undersigned attorney, and for his Memorandum of Law in Opposition to Intervenor's Motion for Summary Judgment, states as follows:

## BRIEF INTRODUCTION

Jurisdiction and venue in this court is predicated upon 41 U.S.C. § 609(a)(1) in that jurisdiction and venue is based upon a decision made by a contracting officer for a Highway Mail Contract, which was between the United States Postal Service and plaintiff. The subject contract (Contract 14024) was transferred and/or novated out of plaintiff's name and into the name of Midwest Transport, Inc. wrongfully and without the named contractor's (Plaintiff Hicks) approval or consent.

## STATEMENT OF FACTS

Since the mid-1970's and for all relevant times herein, plaintiff has been a contractor with the United States Postal Service ("USPS"). More specifically, plaintiff has contracted with the USPS through a d/b/a Hal D. Hicks Mail Transportation ("Hicks") for over-the-road highway mail contracts. In 1990, Hicks was the successful bidder on HCR 14024 ("Contract 14024"). Until the improper novation, the permanent mail contract 14024 was continually renewed every four years since that period of time with Hicks. The annual revenues on Contract 14024 are well in excess of $2,000,000.00.

On February 24, 2004, the USPS allegedly transferred and/or novated Contract 14024 from Hicks' name into Midwest Transport, Inc.'s name. See Contract Route Service Order, attached hereto as App. 001.

As the named contractor, Hicks did not authorize or approve a transfer/novation of Contract 14024. Hicks sent a timely certified claim to the Contracting Officer on July 15, 2005, contesting the improper novation. <u>See</u> Hicks' Affidavit, attached hereto as App. 002.

The United States Postal Service, through its Contracting Officer, denied Hicks' certified claim on September 8, 2005. Plaintiff brought the above-captioned lawsuit against the Defendant in 2005.

The government failed to file a Summary Judgment in this matter. However, Intervenor, Midwest Transport, Inc. did. The principal allegations raised in the Intervenor's Motion for Summary Judgment are that Contract 14024 was the subject of prior State Court litigation and that a judgment and/or order was made in the State Court litigation, which effectively transferred ownership of Contract 14024 from Hicks to

Midwest Transit, Inc., and then from Midwest Transit to Midwest Transport. Intervenor fails to mention that these same arguments were firmly rejected by the Southern District of Illinois. See Order, attached hereto as App. 005.

## ARGUMENT

First and foremost, Midwest Transport, Inc. ("MTI") is not and can not be a defendant in this action. This court allowed it to intervene to protect the alleged interest it has or had in HCR 14024. MTI is not and can not be liable under the government contract that unquestionably existed between Hicks and the government (hereinafter "USPS"), which is the main issue at bar in this case.

Next, although the USPS was adamant it was entitled to Summary Judgment, it interestingly failed and actually waived its right to file a dispositive motion. Apparently it is relying upon Intervenor to defend its case.

### I. Standard for Summary Judgment

Pursuant to RCFC 56(c), summary judgment is only proper where there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

### II. The Buffalo Route Was Not Properly Novated

This case revolves around the USPS's novation of highway mail contracts, specifically HCR 14024. The rules and regulations controlling USPS contracts are promulgated by the government and it should be held to the rules it creates, just as it holds the contractors to the same rules and regulations.

In its motion, Intervenor improperly relies on the Fifth District Appellate Court opinion relating to an order appointing a Receiver for Midwest Transit, Inc. Intervenor

makes bold statements like, "[t]he court made clear that the Buffalo Route was to be considered a company [Midwest Transit, Inc.'s] asset" See, p.3, Memo in Support; See generally, Id. at pp. 3-5, 9 and 11. Yet, for such bold allegations, Plaintiff gives no specific citation to the Appellate Court opinion. Plain and simple, the Appellate Court did not make such a finding.

In fact, ownership of Contract 14024 (also referred to as the Buffalo Route) was not even an issue on appeal. Rather, any reference to the Buffalo Route was in regard to the services Midwest Transit performed on the Buffalo Route, and the monies it was due to be reimbursed by Hicks for said services. Moreover, this was one of the facts the Appellate Court used in its analysis for affirming the appointment of a Receiver. The specific issue the Appellate Court was asked to decide was did the trial court err in appointing a receiver. The answer was no. That, however, is NOT the issue at bar in this case. Intervenor misses the mark here.

Furthermore, upon review of the underlying trial court's order relating to the appointment of the Receiver, there is no finding made regarding the ownership of the Buffalo Route. In fact, the only reference to the Buffalo Route is as follows: "The parties are further enjoined from interfering in any way with the interim Receiver's sole control of the finances of the corporation and are enjoined from diverting any funds away from the corporation and its accounts, including . . .all income generated by the Buffalo Route." See Witters v. Hicks, 780 N.E.2d 713, 718 and 721 (5th Dist. 2002) (citing ¶C of the trial court's Order).

Turning next to the transcripts that underlie the trial court opinion, there is also no evidence to suggest that the trial court determined Contract 14024 was to be transferred

out of Hicks' name and into Midwest Transit's name. See excerpts of Transcript of Proceedings, 6/26/2001, p. 34 (Witters' testimony-". . . precluded Midwest Transit from bidding on the Buffalo Route. . ."); p. 39 (Witters' counsel-". . . the official name of the contract is in Hicks' name."); p. 42 (Witters' counsel-". . . Witters already testified that the contract was officially and technically in Hicks' name."); p. 102 (Witters testimony – "[the contract] stands in his [Hicks'] name."); p. 103 (Witters testimony –"the contract . . . has Hal D. Hicks' name on it," "it [Midwest Transit] did not sign the contract," "Midwest Transit's name does not appear on the contract in writing," and "the contract has had Hicks' name written on it since the beginning."); p. 208. (Ms. Ensminger's testimony – "it's [the Buffalo Route is] in Hicks' name."); p. 209 ("Ms. Ensminger's testimony- "In 1990, Midwest Transit had an unsatisfactory DOT rating, and could not be awarded a contract with an unsatisfactory DOT rating, so Hicks bid on this route personally because he had a satisfactory DOT rating[1]."); see also, p.210. Excerpt of Transcript of 6/26/01 Proceeding, attached hereto as App. 009. These are the citations Midwest Transport failed to bring to this court's attention, because they independently destroy the unfounded claims asserted in the Motion for Summary Judgment.

The ruling and the transcripts underlying the ruling only conclude that Midwest Transit, Inc. was entitled to the Buffalo Route revenues, while in Receivership, because it provided services on the route. Albeit, using Hicks' personal equipment at all times relevant hereto. The transcripts, the trial court order and the Appellate Court opinion do not make a determination as to the ownership of the Buffalo Contract.

---

[1] Ms. Ensminger had previously testified that Mr. Hicks had been personally contracting with the U.S. Postal Service since 1978. See, p. 207. Further, it is undisputed that Mr. Hicks' personal mail hauling business started before Midwest Transit, Inc. was formed, in 1980.

The only other references made by the Appellate Court to the Buffalo Route are as follows:

> The Buffalo Route was a mail route operated by MWT. MWT pays for all fuel and other operating costs. MWT employees operate the route and handle all the paperwork for the route. MWT financial statements show a line item for revenue from the Buffalo Route. Although maintained in Hicks' name, since its inception, revenue for the Buffalo Route had been transferred to MWT. Since the beginning of the present suit, Hicks retained the revenue from the route, although it continues to be operated by MWT and at MWT's expense. Hicks acknowledges that several MWT trucks are used to operate the Buffalo Route, but he argues that MWT uses 68 of his trucks but pays him nothing. Not only does this not justify Hicks' use of MWT assets and personnel to operate a route, which is in his name and from which he keeps all revenue, but it also is exactly the type of commingling of personal and corporate assets that justifies the appointment of a Receiver. Id. at 720 (emphasis added).

Without doubt, no inference can be drawn from the trial court's Order or the Appellate Court's opinion that would justify a conclusion that a finding was made with regard to Midwest Transit's ownership of Contract 14024. Rather, an inference can be drawn from the findings that the contract is in Hicks' name, and that Hicks owns[2] Contract 14024. Any factual or legal conclusions to the contrary are unfounded.

Moreover, Intervenor, not Hicks, is the one seeking a second bite at the apple here. A Federal Court of competent jurisdiction has already addressed the issues raised regarding of ownership of the Buffalo Route. See, Hicks v. Midwest Transport, Inc., 2005 WL 1267463, p. 3 and 4 (the court stated Midwest Transport's argument fails; for as Hicks suggested, no state court explicitly declared Midwest Transit the owner of the Buffalo route). The decision was crystal clear, yet Intervenor attempts to end run the S.D. of Illinois' decision and interpretation of the same facts and argument. See App.

---

[2] The U.S. Postal Service refers to the owner as the "holder" of the contract. See e.g., 39 U.S.C. §5005(b)(1).

006-007. In short, the Illinois state court DID NOT determine that the Buffalo Route was Midwest Transit's asset. Id. To the contrary, to support the state court's findings the presumption must be that the Buffalo Route was Hicks'. Id. Any argument by Intervenor to the contrary is without merit.

Intervenor provided this court with a detailed analysis of the facts it believes are important in analyzing its Motion for Summary Judgment. However, Midwest Transport conveniently skimmed over a very important fact. Midwest Transport claims the State Court entered an Order approving a sale of Midwest Transit's assets to Midwest Transport, as contemplated by the terms set forth in the letter of intent. See p. 5, Memo in Support (emphasis added). Further, the Order Intervenor cites states that the Receiver "is authorized to sign the Letter of Intent and to enter into a definitive agreement as contemplated in the Letter of Intent." See, Order, App. 032, of Intervenor's Memo in Support (emphasis added). Then Intervenor asserts that ultimately a sale contract was entered into between Midwest and Intervenor whereby certain assets of Midwest were conveyed. See pp. 3-4, 5, 9 and 11, Intervenor's Memo in Support. Again, the emphasis in these allegations is "certain assets of Midwest were conveyed." And Contract 14024 was not an asset of Midwest Transit.

Next, Intervenor quickly brushes over the fact that Midwest Transit's assets were sold pursuant to an amendment to the Definitive Asset Purchase Agreement. This amendment, however, was not approved by the trial court, and based upon the facts it is doubtful this amendment was presented to the USPS. See First Amendment to the Definitive Asset Purchase Agreement, attached hereto as App. 019; see also, Novation Agreement, attached hereto as App. 031. This fact is unsettling but, nonetheless, cannot

be disputed by the USPS or the Intervenor. The Novation Agreement does not list the Amendment as being a document made part of the novation. This lack of due diligence on the USPS is sub-standard at best. Shockingly, this self-serving amendment allowed Intervenor to back date the company sale by approximately nine months. This act quietly authorized an illegal sub-contract of all of Midwest Transit's mail contracts for 9 months, in clear violation of USPS and DOT rules and regulation. See App. 021, ¶ 2. It's important to note, Midwest Transit enjoyed revenues well in excess of $60,000,000.00 per annum.

So, while Midwest Transit bore all the burdens and risks (insurance, liability factors, DOT compliance, license and titling, etc.) of operating the $60,000,000.00 company in 2003, Intervenor caused Midwest Transit to forfeit revenues, net profits and tax benefits during this nine-month period. The transaction was more than gratuitous, but most importantly was executed without court authority. Thus, Intervenor's attempt to convince this court that it was an innocent third-party purchaser that simply bought Midwest Transit's assets pursuant to a court order is profound, to say the least. The Intervenor's reliance upon a letter from an attorney from Illinois, which it utilized to try and convince the USPS that the sale was on the up and up and that it was court-approved, is more than questionable. Why the USPS did not require verification of the representations is unknown, especially in light of the fact the original agreement was substantively changed and that it was allegedly approved almost 12 months earlier.

Next, Intervenor's interpretation of a contract route service order is misleading. Intervenor attached a contract route service order (App. 0136) to their Motion for Summary Judgment. An actual review of the document, however, reveals unquestionable

problems with Intervenor's assertions. For instance, the contract route service order states that, "the Postal Service has approved a novation agreement, for the below-listed contracts from Midwest Transit, Inc. to Midwest Transport, Inc.. . ." See App. 0136, to Intervenor's Memo in Support (emphasis added). On its face and pursuant to the USPS's rules underlying novations[3], the novation only transferred contracts that were in Midwest Transit's name to Midwest Transport. Id.; see also, USPS Purchasing Manual §6.5.4. Intervenor even concedes the Novation Agreement only transferred the "…contracts held by Midwest Transit…" See p. 7, Intervenor's Memo in Support (emphasis added). Furthermore, Intervenor's own President admits the Buffalo Route was never in Midwest Transit's name. See Affidavit of Ken Hohlbaugh, App. 0140 of Intervenor's Memo in Support. Common sense and a good faith interpretation of the rules surrounding novations would also dictate that one would have to be named on the contract in order for the contract to be subsequently novated/transferred out of "your" name and into another's.

Moreover, ¶9 of the contract route service order lists Midwest Transit, Inc. as the contractor. See App. 0136, to Intervenor's Memo in Support. Yet, Midwest Transit was never the named contractor for Route 14024. Midwest Transit was, however, the contractor for the other 90 plus contracts listed on the service order. As such, Route

[3] Novation is a procedural step used by the U.S. Postal Service to effectuate the transfer of a contract out of one contractor/supplier's name and into a new contractor's name. A novation is the only official method of changing contractors on a mail route. And the contractor is the person who is ultimately liable or responsible to the U.S. Postal Service for damages suffered by the Postal Service on a particular mail route. See generally, the U.S. Postal Service's Purchasing Manual; see also, 39 U.S.C. §5001, et. seq. and 39 U.S.C. §5201, et. seq.

14024 was not effectively or legally novated pursuant to the contract route service order. The USPS's internal policies and procedures actually prevented it from happening.

And that is why the revenue checks for Contract 14024 continued to come in Hal D. Hicks' name after the alleged novation.[4] See, checks, attached hereto as App. 035. Further, that is why Midwest Transport continued to forge Hicks' name when cashing said government checks. It was not until February 24, 2004 that Midwest Transport insisted the Postal Service effectuate the transfer of Contract 14024 from Hal D. Hicks' name to Midwest Transport, Inc. See, Contract Route Service Order attached hereto as App. 001. In furtherance of the wrongdoing, the USPS unilaterally decided to end the matter by causing the Buffalo route to be novated from Hicks' name into Intervenor's name. Notice in this Contract Route Service Order, the contractor in ¶9 is Hal D. Hicks. Yet, a novation agreement by Hicks would have had to support such a transfer, and Hicks did not sign a novation agreement. There were only three parties to the novation agreement here: Midwest Transit, Inc., the Intervenor, and the USPS. See Novation Agreement, App. 127-130 to Intervenor's Memo in Support. There are rules that govern novations, and all were apparently thrown out the window here. Again, Intervenor conveniently left these compelling details out of its Motion for Summary Judgment, and presumably this is why the government chose not to file a dispositive motion. Nonetheless, these factual details go to major issues in this case, and these same substantive facts are clearly in dispute. Therefore, for all the foregoing reasons

---

[4] It was clear in early 2004 that Midwest Transport had been forging Mr. Hicks' name on the government checks for approximately one year.

Intervenor's Motion for Summary Judgment should be denied. This case is ripe for a trial on the merits.

THEIL LAW FIRM, L.L.C.

By: _/s/John F. Theil__________
John F. Theil
120 S. Central, Suite 1550
St. Louis, MO 63105
314-725-1725
314-725-5754 (Fax)
johntheil@johntheil.com

*Attorney for Plaintiff*

**Certificate of Service**

The undersigned certifies that a copy of the foregoing was electronically filed this 5th day of December 2007, and served on the following counsel of record via electronic filing:

Michael D. Austin, Trial Attorney
U. S. Department of Justice
Civil Division – Commercial Lit. Branch
1100 L. Street, NW
Washington, DC 20530
Attn: Classification Unit, 8th Floor
michael.austin@usdoj.gov
*Attorneys for Defendant*

David Paul Hendel
Wickwire Gavin, P.C.
8100 Boone Boulevard, Suite 700
Vienna, VA 22182-2642
david.hendel@akerman.com
*Attorneys for Defendant-Intervenor*

_/s/John F. Theil____________________